# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

106   11
126   473
106   11
40a  126
106   11
65a  275
65a  358

OCTAVIUS PIERCE

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield March 29, 1883.*

1. FOREIGN INSURANCE COMPANIES—*power of the State to prescribe a penalty against an agent of a company which has not complied with the statute.* Section 22, of the general Insurance law of 1869, so far as it provides a penalty against any agent of a foreign insurance company for acting for such company without a certificate of authority from the Auditor showing it has complied with the requisitions of the act, and declares that any person aiding, in any manner, in transacting the insurance business of such company shall be subject to such penalty, is a constitutional and valid law.

2. It is competent for the legislature to declare all contracts of insurance made by a citizen of this State with a foreign insurance company having no right to do business here, void, on the ground of being contrary to the public policy of the State; and in furtherance of the same object, the legislature may declare it a penal offence for any one to do anything here, whether acting on behalf of the insurer or insured, by way of aiding in effecting insurance in such companies not qualified to do such business under our laws.

3. SAME—*as to the place where the contract may be made, as affecting the liability of the agent here.* So far as concerns the liability of the agent acting in this State, to the penalty prescribed, it matters not where the con-

tract of insurance may be made. The evil intended to be reached by the act was not merely the making of such contracts *in this State.* What the legislature desired to accomplish was to prevent them being made at all.

4. Same—*whether a person is to be regarded as the agent of the company or of the assured.* In this case, upon the question whether a person acting in the matter of procuring property in this State to be insured by a foreign insurance company was acting as the agent of the company or of the assured, it was considered, on the facts appearing, that he should be regarded as the agent of the insurance company, and as such subject to the penalty imposed by the act of 1869, notwithstanding a clause in the policy providing that any person, other than the assured, who shall participate in any transaction concerning the insurance will be deemed the agent of the assured, and not of the company.[*]

Appeal from the Superior Court of Cook county; the Hon. Rollin S. Williamson, Judge, presiding.

Mr. Thomas Bates, for the appellant:

The statute does not attempt to prevent an insurance company in New Orleans from insuring property in Illinois, provided the contract for insuring is made in New Orleans, and the policy written there. Nor does it prohibit a citizen of this State, either by himself or his agent, from sending to an insurance company not admitted to do business in this State for insurance on his own property. *People* v. *Imlay,* 20 Barb. 68; *Clay Fire and Marine Ins. Co.* v. *Huron Salt and Lumber Co.* 31 Mich. 354; *Lamb* v. *Bowser,* 7 Biss. 315; *Union Mutual Life Ins. Co.* v. *McMillen,* 24 Ohio, 79; *Hunter* v. *Merrill,* 32 Barb. 628; *Jackson* v. *State,* 50 Ala. 141; *New Orleans* v. *Virginia Fire and Marine Ins. Co.* 31 La. Ann. 781.

Appellant, in procuring this policy, was the agent of the insured, and not of the company. As bearing on this point, see *Ben Franklin Ins. Co.* v. *Weary,* 4 Bradw. 78; *Fame Ins. Co.* v. *Thomas,* 10 id. 554; *Standard Oil Co.* v. *Triumph Ins. Co.* 64 N. Y. 89; *Hartford Ins. Co.* v. *Reynolds,* 36 Mich. 506; *Lycoming Fire Ins. Co.* v. *Rubin,* 79 Ill. 403. Besides, the policy itself made him the agent of the insured.

[*] See *Union Ins. Co.* v. *Chipp,* 93 Ill. 96, as bearing on this subject.

Mr. W. C. GOUDY, also for the appellant, among various other points, in addition to those above, made the following:

The contract was made in Louisiana. The proposition was sent by letter from Chicago to New Orleans, and accepted there. The policy was made and signed there, and mailed from that city. As soon as mailed, the contract was binding on the insurance company. *Huntly* v. *Merrill*, 32 Barb. 566; *Hyde* v. *Goodnow*, 3 N. Y. 266; *Western* v. *Insurance Co.* 12 id. 236; *Lamb* v. *Bowser*, 7 Biss. 315; May on Insurance, sec. 66.

Mr. E. B. SHERMAN, and Mr. J. L. HIGH, for the People:

The Insurance law of 1869, for a violation of which this suit is brought, is constitutional and valid. *Cincinnati Mutual Health Association* v. *Rosenthal*, 55 Ill. 85; *Ward* v. *Farwell*, 97 id. 593; *Chicago Life Ins. Co.* v. *Auditor*, 101 id. 82; *Farmers and Merchants' Ins. Co.* v. *Harrah*, 47 Ind. 236; *Franklin Ins. Co.* v. *Louisville*, 9 Bush, 590; *Lamb, Assignee* v. *Lamb*, 6 Biss. 420.

The statute does, in terms, prohibit any foreign insurance company not having complied with the provisions thereof, from taking any risk on property situated in the State of Illinois, and such is its evident intent and purpose. Rev. Stat. chap. 73, sec. 22.

In order more effectually to prevent such illegal transaction of insurance business in this State, agents of such corporations, and all other persons, are expressly prohibited from aiding, in any manner, directly or indirectly, in the taking of risks or the transacting of such business of insurance in this State. Rev. Stat. chap. 73, sec. 22.

Appellant was clearly an agent of the insurance company, within the meaning of the statute, and acted as such in placing the risk in question, and in transacting the said business. Rev. Stat. chap. 73, sec. 22; *Ford* v. *Buckeye Ins. Co.* 6 Bush, 133; *Lamb* v. *Lamb*, 6 Biss. 420.

Mr. Justice Mulkey delivered the opinion of the Court:

This is a penal action, brought in the Superior Court of Cook county, by the Attorney General, in the name and on behalf of the People, the appellee, against Octavius Pierce, the appellant, under the 22d section of the act of the 11th of March, 1869, entitled "An act to incorporate and to govern fire, marine and inland navigation insurance companies."

The declaration charges "that the defendant, on June the 1st, 1880, acted as the agent of, and transacted business for, the Firemen's Insurance Company of New Orleans, in taking risks and transacting business of fire insurance in the State of Illinois, and as such agent did procure and deliver to Stina Wiggins, of said county, a policy of insurance, numbered 13,149, whereby the said Firemen's Insurance Company of New Orleans did insure the said Stina Wiggins against loss or damage by fire for one year, from June 1, 1881, in the sum of $1000, on property in Cook county, described as follows:" giving a description of the property. It is also shown, by proper and formal averments, that at the time the defendant so acted as agent, the Firemen's Insurance Company of New Orleans was a foreign insurance company, organized and doing business under the laws of the State of Louisiana, and had not complied with the requirements of the general Insurance act above referred to. In another count of the declaration it is charged that the defendant assisted "in procuring, issuing and delivering to Stina Wiggins said policy, and that said acts were done by defendant as agent of said company." There was a general traverse of the averments of the declaration, and the cause, by consent of parties, was tried before the court without a jury, resulting in a finding and judgment in favor of plaintiff for $500, and costs, and thereupon the defendant appealed to this court.

There is no controversy so far as the *evidentiary facts* are concerned,—the controversy being entirely as to a conclusion

of fact. The case, in this respect, turns in the main upon the testimony of the appellant himself. He testifies as follows: "I am engaged in the insurance business, and have been so engaged for several years. I wrote a letter, of which the one shown me is a copy. The letter is dated May 25, 1881, and was directed and sent to the Firemen's Insurance Company of New Orleans, and was received by them. The letter is as follows:

" 'CHICAGO, *May 25, 1881.*

" '*Firemen's Ins. Co., New Orleans, La.:*

" 'GENTLEMEN : I am requested by Mrs. Stina Wiggins, of this city, to ask you if you will accept a risk on her furniture factory, as per memorandum inclosed. If so, you can either send policy direct to her, or to me, and I will deliver it for you, and see that the premium is remitted to you.

" 'Your early reply will greatly oblige,

Yours, very truly,
O. PIERCE.'

" 'MEMORANDUM.—One year, $1000, 5 per ct. prem., $50, June 1, 1881. On the frame building in the alley, situate in the rear of No. 198 Union st., and on the 'L' connected and running north along the alley in the rear of Nos. 200 and 202 North Union st., Chicago, Ill.

O. P.

" '*Note.*—Occupied as a furniture factory.'

"I received no reply to the letter, but they sent the policy of insurance, and nothing else. The policy now shown me is in every respect a copy of the policy received in answer to the letter, except that one was signed by the officers of the company and this is not. The policy sent me was dated June 1, 1881, and when received I delivered it to Mrs. Wiggins. It was accepted by her, and she paid me the premium, $50, of which amount I remitted $40 to the Firemen's Insurance Company, and retained $10 as my commission."

The policy itself contained a provision that any person other than the assured procuring the insurance to be taken

by the company, should be deemed the agent of the assured named in the policy, and not of the company. On the back of the policy also appears this indorsement: "Read the conditions of this policy.—Expires June 1, 1882. Sum insured, $1000. Rate, 5 per cent. Premium, $50, less 20 per cent; rebate, $10; net, $40."

The 22d section of the Insurance act, above referred to, contains, among others, the following provisions: "It shall not be lawful for any insurance company, association or partnership incorporated by or organized under the laws of any other State of the United States or any foreign government, for any of the purposes specified in this act, directly or indirectly, to take risks or transact any business of insurance in this State, unless possessed of the amount of actual capital required of similar companies formed under the provisions of this act; and any such company desiring to transact any such business, as aforesaid, by any agent or agents in this State, shall first appoint an attorney in this State, on whom process of law can be served, and file in the office of the Auditor of Public Accounts a written instrument, duly signed and sealed, certifying such appointment.   *   *   * Nor shall it be lawful for any agent or agents to act for any company or companies referred to in this section, directly or indirectly, in taking risks or transacting the business of fire or inland navigation insurance in this State, without procuring from the Auditor of Public Accounts a certificate of authority, stating that such company has complied with all the requisitions of this act which apply to such companies, and the name of the attorney appointed to act for the company. *   *   * Any violation of any of the provisions of this act shall subject the party violating the same to a penalty of $500 for each violation, and of the additional sum of $100 for each month during which any such agent shall neglect to file such affidavits and statements as are herein required. *   *   * The term 'agent or agents,' used in this section,

*shall include an acknowledged agent, surveyor, broker, or any other person or persons who shall, in any manner, aid in transacting the insurance business of any insurance company not incorporated by the laws of this State.*"

One of the grounds assigned in the court below in support of the motion for a new trial is, that the Insurance act of 1869, so far as it relates to foreign insurance companies, is unconstitutional. But it is conceded here by counsel for appellant, if the act is construed as merely prohibiting foreign companies from coming into this State and doing an insurance business here, except upon the conditions prescribed by the act, it is constitutional. This proposition is so clearly settled by the authorities, it can no longer be regarded as an open question. But it is contended, on the other hand, that if the act is to be construed "so as to prevent an inhabitant or citizen of this State from making a valid contract with a corporation created by the laws of Louisiana, and doing its business in that State, then it is in conflict with that provision of the Federal constitution declaring that the citizens of each State are entitled to all the privileges and immunities of the citizens of the several States." According to the view we take of the facts of this case we do not deem it important to determine whether the construction last suggested is the true one or not, or, conceding such to be the proper construction, whether the act, in that event, would be obnoxious to the Federal constitution, as is supposed by counsel. It will be time enough for the discussion of these questions when a case comes before us in which the contract of insurance or the acts complained of clearly occurred outside of the State. For the purposes of this case we may assume the construction of the act first above suggested is the true one, and in that view it is conceded by all parties to be constitutional and valid.

Assuming, then, the act only extends to persons who make contracts of insurance here on behalf of such companies, or

who do acts here in furtherance or in aid of such contracts, though concluded out of the State, the case before us is brought within a very narrow compass. It resolves itself into this: Was appellant, in procuring from the company the policy issued to Mrs. Wiggins, acting exclusively as her agent, and not as the agent of the company,—or, more pointedly, can it be truthfully said that the appellant, in procuring from the company the policy in question, was not, *"in any manner, aiding in transacting the insurance business"* of that company in this State? We do not think that it can. In the light of all the circumstances it is difficult to arrive at any other conclusion than that the appellant, in obtaining the insurance in question, was acting as the agent of the company, or at least was in some manner aiding in the transacting of insurance business by that company in this State, within the meaning of the act. It is to be specially noted, as we have already seen, that the term "agent," as defined in the act, is not confined to such as are duly appointed or acknowledged by these companies, and who have opened offices and established places of business in this State, but extends to "any other person or persons *who shall, in any manner, aid in transacting the insurance business* of any insurance company not incorporated by the laws of this State," and which has not complied with the provisions of our insurance act. It being admitted this company was not incorporated under the laws of this State, the simple inquiry is, did the appellant, in any manner, aid in transacting the insurance in question? Now, it is manifest that it was almost wholly through his agency the insurance was effected. If you leave out of view the part he played in the transaction there would be really nothing of it. As it was, an insurance was effected between a citizen of this State and a foreign insurance company not having authority to do business here, upon property in this State,—the very thing the legislature intended to prevent so far as it was competent for it to do so,

—and yet we are asked to say the appellant did not, in any manner, aid in effecting the insurance; for to admit that he did, we are bound by the express terms of the act to hold he was the company's agent.

It is an error to suppose the evil which the legislature intended to reach was the making of such contracts *in this State*. What the legislature desired to accomplish was to prevent their being made altogether. The evil sought to be reached was the taking of risks by these companies on the property of our citizens situated in this State. It was therefore a matter of entire indifference, so far as the evil sought to be reached was concerned, where these contracts were made, if to be made at all. In adopting our Insurance act the legislature evidently intended to protect the citizens of this State, and keep them out of the clutches of worthless and irresponsible companies, and to force all companies, good and bad alike, to keep an adequate fund within the jurisdiction of our own courts for the protection of policy-holders. It may be admitted that it was incompetent for the legislature, in endeavoring to accomplish this object, to say that a citizen of this State should not make a contract with a foreign company not having the right to do business here, for the insurance of property in this State, yet the legislature, in such case, would clearly have the power to declare all such contracts void, when sought to be enforced here, on the ground they are contrary to the public policy of the State; and we perceive no reason why it might not also, in furtherance of the same object, declare it a penal offence for any one to do anything here, whether acting on behalf of the insurer or assured, by way of aiding in effecting such insurance by these companies.

But waiving all these considerations, can it, in the light of the unquestioned facts of the case, be doubted that there must have been either an express or tacit understanding between the company and appellant that he was to act for

it in obtaining risks on property in this State? He states, himself, that he is, and has been for some years, in the insurance business; that his place of business is No. 202 La Salle street, and that while thus engaged in business he made the application in question; that he wrote and sent the above letter to the company, asking it to take the risk in question, which purports.on its face to have been written at her request, but in his testimony he does not claim or pretend that, as a matter of fact, she requested him to write any such letter, or that she gave him any instructions whatever with reference to the insurance. For aught that appears from his own testimony she may have simply called at his office and told him she wanted insurance in some good company, and left the entire matter to him, as is frequently done. But this, of course, is matter of mere conjecture. As to what actually took place between him and her his testimony is significantly silent.

It further appears from appellant's testimony, as we have already seen, that at the time of forwarding the application he also sent a description of the property and a memorandum of the terms of the contract; that the policy was made out in exact conformity with the terms proposed, and returned to him to be delivered to her; that upon receiving the policy so made out, he delivered the same to her, she paying him the premium of $50, $10 of which was retained by him as commissions and the balance forwarded to the company. If we leave out of view the fact that the application purports to have been made at the request of the assured,—though, as before stated, appellant does not, in his testimony, claim or pretend it was so made,—in what does this transaction differ from other cases where the agents of foreign companies doing business here forward like applications to the home offices? In nothing, that we can see. And yet in those cases, so far as we are advised, it is universally understood that the local

agents here act as the agents of such companies in effecting insurance.

Moreover, it seems to us that in this particular case the conduct of the company, viewed in the light of a business transaction, is wholly unaccountable, except upon the hypothesis the appellant was acting for and in the interest of the company in effecting this insurance. Assuming this was a mere casual transaction, in which he acted as a mere friend of the assured, and that there was no previous understanding or arrangement by which applications of this kind were to be forwarded to the company, how is it that he or Mrs. Wiggins, or both of them together, were able to fix in advance all the terms and conditions of the insurance so satisfactorily to the company, without at all consulting the company on the subject? Under the circumstances suggested, the more natural course would have been to have written a letter to the home office of the company, inquiring whether it would take the desired risk, and if so, the terms upon which it would take it. And to have enabled the company to have acted intelligently in the premises, the appellant should, and doubtless would, have prepared and inclosed with the letter of inquiry a regular survey of the property upon which the insurance was desired. But nothing of this kind was done. On the contrary, the terms of the insurance were all settled, and sent with the application, substantially in the same manner it is usually done in other cases where the party making out and forwarding the application is confessedly acting for the company. And not only so, upon the application being thus made out and forwarded, the company, without any such survey or other information, so far as the evidence shows, to enable it to determine the extent of the hazard in accepting the terms proposed, quietly made out the policy, inclosed it in an envelope, and addressed and mailed the same to appellant at Chicago, without any accompanying letter, note or direction, or a single word of

explanation or comment. Upon the hypothesis appellant was acting as the agent of the company in this transaction, the company's conduct is rational enough; but upon the theory he was acting as the agent of the assured only, its conduct is wholly inexplicable, on business principles.

Again, if appellant was acting as a mere friend of Mrs. Wiggins, and not as the agent of the company, in taking her application, we are at a loss to see how he could consistently have collected $50 of her as premium, since the company was only entitled to $40, upon the hypothesis he was not acting as its agent. From his account of the affair, however, it is clear enough she understood she was paying the company the entire sum of $50 as premium. Had he told her the company would only be entitled to $40 net, but that he should charge her $10 for asking the company if it would take the risk, the probability is she would have declined his services. However skillfully disguised, the true character of the transaction seems to us apparent. The $50 was paid by her as premium,—that being the amount she proposed to pay in her application,—and as between her and the company no rebate of twenty per cent was intended or expected, notwithstanding the provision in the policy to that effect. As between the appellant and the company of course the rebate was allowed, which was nothing more than a payment by the company of the usual fee allowed in such cases.

When we examine this policy in the light of the facts in this case, we can not repel the conviction that the provision in it just referred to, providing for a rebate of twenty per cent of the premium, and also the provision declaring "that any person, other than the assured, who may have procured this insurance to be taken by this company, shall be deemed to be the agent of the assured named in this policy, and not of the company, under any circumstances whatever, or in any transaction relating to this insurance," were inserted in the forms of the company's policies for the express purpose

of enabling the company and its agents to evade the above provisions of our Insurance act, and similar acts of other States. Yet all such schemes, however cunningly devised, must necessarily fail. Courts look to the substance of a transaction, rather than the form, and will not permit the legislative will to be defeated by the most ingenious shifts and devices. If one engages another to attend to his business, and the latter enters upon the duties assigned to him, he thereby becomes the other's agent as to everybody else, notwithstanding it may have been expressly stipulated between the parties that he should be regarded as the agent of some one other than the employer. All such attempts to change or control the law of the land by stipulations between contracting parties, must necessarily prove idle and futile.

The question here is, did the appellant, within the meaning of the statute, act as the agent of the company? In his letter to the company he says, if it accepts the risk, "you can either send policy direct to her, or to me, *and I will deliver it for you*, and see that the premium is remitted to you." The policy was sent by the company to the appellant, and he delivered it to her. His express undertaking with the company, if sent to him, was to deliver it to her *for the company*, and he did so deliver. So far, then, as the delivery of the policy is concerned, it is manifest he was acting for the company; and so with respect to the receiving the premium from the assured, and transmitting it, less his fees, to the company. By sending the policy to him, the company impliedly authorized him to collect the premium from the assured and remit the same to the company, for that was just what he proposed to do if the policy was sent to him for delivery, as it subsequently was; and if he was authorized to receive the premium, of course the assured was warranted in paying it over to him. Now, suppose appellant, after receiving the premium, instead of sending it to the company

had converted it to his own use, would the assured still have been liable to the company for the premium? Surely not. And yet such would unquestionably be the result if appellant is not to be regarded as the agent of the company for the purpose of delivering the policy and receiving and transmitting the premium. Again, could the assured, after having paid over the premium, and before it had been transmitted to the company, have compelled appellant to return it to her? Certainly not. And yet she undoubtedly could if the money, when thus paid over and before transmission to the company, was in his hands as her agent, and not the company's.

In any view we take of this case, we have no hesitancy in holding the appellant was acting as agent of the company in the transaction. The appellant, although he had an opportunity of doing so, did not, anywhere in his testimony, either directly or by implication, deny his agency.

The judgment will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE CRAIG: This being a penal action, I do not think the testimony sufficient to show that the defendant was the agent of the insurance company, or that he aided the company in making the insurance in violation of the statute. If he was not the agent, and did not aid the insurance company in violation of the statute, which I am satisfied the evidence fails to establish, the judgment ought to be reversed.