People of the State of Illinois ex rel. Ernest Palmer, Plaintiff, v. State Life of Illinois, Defendant Below.
In re Claim of Old Republic Credit Life Insurance Company, Appellant, v. H. B. Hershey, Appellee.

Gen. No. 39,465.

Opinion filed June 29, 1938.

GEORGE PACKARD, NORMAN A. NELSON, JR., OLSON & OLSON, and THOMAS B. GILMORE, all of Chicago, for appellant; GEORGE PACKARD and THOMAS B. GILMORE, of counsel.

BENJAMIN S. ADAMOWSKI, of Chicago, for appellee.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This is an appeal from a decree entered in the superior court holding what the court believed to be the law applicable to said case and that the claim of $184,-065.28 allowed the claimant appellant was without priority and without preference as to any part of the assets of the State Life of Illinois. No order requiring payment in conformity with such decision was entered. We further note from the briefs and record that the suit originated through Ernest Palmer as director of insurance of the State of Illinois when he filed a bill to dissolve and liquidate the assets of the State Life of Illinois, a life insurance company organized and existing under an act entitled, "An Act to Organize and Regulate the Business of Life Insurance," enacted March 26, 1869, and the subsequent amendments thereto.

By the terms of the complaint, it was alleged that the company was insolvent and the director of insurance asked that a receiver be appointed to liquidate the company and that its outstanding policies be reinsured in some solvent company. The company was found to be insolvent and H. B. Hershey was appointed receiver. Upon his appointment and pursuant to court order he solicited the reinsurance of the outstanding policies and, after appropriate hearings and further proceedings, the Old Republic Credit Life Insurance Company undertook the reinsurance of all of the outstanding policies of the State Life of Illinois pursuant to a contract of reinsurance duly entered into and approved by a decree of the court.

By the terms of the contract of reinsurance, a lien similar in character to a policy loan was placed against the policies so reinsured, representing in effect the impairment of the reserve of the policy. Also, by the terms of the reinsurance contract and under the decree of the court authorizing and approving it, the Old Republic Credit Life Insurance Company was assigned, from the assets of the State Life of Illinois, the reserve on each policy reinsured by it and became entitled to the rights, benefits, preferences and priorities of the policyholders of the State Life of Illinois in and to the assets of that Company. The Old Republic Credit Life Insurance Company was also authorized and instructed by the contract and the decree to file a claim with the receiver for and on behalf of the policyholders of the State Life against the assets of that Company in the receiver's hands, and to claim for the benefit of those policyholders any priorities or preferences to which they might be entitled in and to those assets.

Among those assets were certain first mortgage loans, having a par value of slightly over $100,000, which had been deposited with the director of insur-

ance by the State Life of Illinois in accordance with the provisions of "An Act to Organize and Regulate the Business of Life Insurance," enacted March 26, 1869, as subsequently amended.

Pursuant to the decree of court and the reinsurance contract, the Old Republic Credit Life Insurance Company filed a claim with the receiver for and on behalf of the policyholders of the State Life of Illinois for the amounts due the policyholders from the State Life of Illinois and in and by that claim a right of preference and priority was asserted as to the assets of the State Life of Illinois which had been deposited with the director of insurance pursuant to the provisions of "An Act to Organize and Regulate the Business of Life Insurance" enacted March 26, 1869, as amended. It was claimed and asserted that the deposit of securities made pursuant to that act, and required thereby, constituted a fund for the special benefit and protection of the policyholders of the depositing life insurance company and that accordingly policyholders of the company had a right of priority and preference over other creditors as to those assets upon the insolvency of the company.

The receiver recommended allowance of the claim in the sum of $184,065.28, but recommended that the claim for preference and priority as to the deposited assets of State Life of Illinois be denied.

Objections were filed to the failure to allow the claim of preference and priority as to the deposited assets and the objections were referred to a master in chancery who ruled and a decree was entered that no preference or priority should be allowed. Exceptions to the master's report were overruled and a decree was entered finding in substance that the law should be construed to mean there was no preference or priority in and to the deposited assets and that such assets

were subject to the claims of all creditors alike. From that decree this appeal was taken.

The claimant appellant's theory of the case is that the only question in this case is the construction of section 1 of the Act to Organize and Regulate the Business of Life Insurance enacted March 26, 1869, as amended, and the meaning, purpose and intention of the legislature in requiring a deposit of "guarantee capital" by corporations organized under that act, and further claiming:

"(a) That the meaning and intent of the legislature in passing the Act of March 26, 1869, entitled "An Act to Organize and Regulate the Business of Life Insurance," requires that securities deposited with the insurance authorities be held as a trust fund for the benefit of the policyholders and not as a fund for the general creditors.

"(b) That said Act must be interpreted in connection with all its subsequent amendments, and enactments *in pari materia,* as a comprehensive whole, in order to determine and apply the legislative intent, and that such intent, if disclosed, becomes a part of the Act.

" . . .

"(g) That the decree should have allowed the Old Republic Credit Life Insurance Company claim against the receiver as entitled to a preference out of the securities deposited with the insurance department as a trust fund for the benefit of policyholders, as it was not a fund intended by the Act to be for the protection of creditors generally, but only for policyholders."

Appellee contends that the sole issue precipitated by this appeal is whether or not a "Guarantee Capital" deposit made pursuant to section 1 of the Act to Organize and Regulate the Business of Life Insur-

ance, enacted March 26, 1869, as amended, constitutes a fund for the equal benefit of all creditors, including policyholders of the depositing company; that there is no language in the said act which establishes the "Guarantee Capital" deposit for the sole and exclusive benefit of policyholders, to the exclusion of the other creditors, of a depositing company; that subsequent amendments to this act over a period exceeding 68 years have not limited or qualified the purpose and meaning of this "Guarantee Capital" deposit, and have not made it an express or implied trust fund for the sole and exclusive benefit of policyholders of a depositing company.

Counsel for appellee does not in his brief contradict the estimate placed by counsel for appellant upon the decree. Counsel for claimant appellant in their argument, state:

"This appeal from a decree that really is not a decree at all (for it orders nothing to be done, merely reciting the argumentative opinion set forth in a Master's report), . . ." We shall say nothing more about this point, for if we held with appellant upon this point we would necessarily have to dismiss the appeal for want of jurisdiction, as we cannot review other than final decrees, unless authorized by statute.

Section 1 of "An Act to Organize and Regulate the Business of Life Insurance," enacted March 26, 1869, on which this appeal is based, reads as follows:

"Be it enacted by the People of the State of Illinois, represented in the General Assembly, that before any life insurance company goes into operation under the laws of this State, a guarantee capital of at least $100,-000.00 shall be paid in money and invested in those securities of the United States, or of this State, or any county, city, town, or municipal corporation of this State which are direct obligations of the United States, this State, or county, city, town or municipal

corporation issuing the same, estimated at their market value or in mortgages which are first liens on real estate in this State, the said real estate being worth at least twice the amount of money loaned thereon with evidence satisfactory to the Director of Trade and Commerce respecting the title to the property, and accompanied by the certificate of two reputable land-holders, under oath, certifying to the value of said property, or any tax anticipation warrants issued by the State of Illinois, or any county, city, town, village, sanitary district, board of education, board of park commissioners, or any other municipal corporation of this State, or the tax anticipation warrants of any other state, or any county, or political subdivision, or municipal corporation thereof, provided, such other state by its legislation, permits insurance companies chartered under its laws to invest in the tax anticipation warrants of the State of Illinois, or counties, cities, towns and other municipal corporations of this State.''

In referring to the above statute the Supreme Court in the case of *Pierce v. People,* 106 Ill. 11, the court at page 19, said: ''In adopting our Insurance act the legislature evidently intended to protect the citizens of this State, and keep them out of the clutches of worthless and irresponsible companies, and to force all companies, good and bad alike, to keep an adequate fund within the jurisdiction of our own courts for the protection of *policyholders.''*

In 1887 the legislature added to the act above quoted, the following:

''Whenever the corporators shall have fully organized such company, and the said company shall have deposited with the auditor the required amount of capital, it shall become his duty to furnish the corporators with a certificate of deposit, which, with the certified copy of said declaration, previously received from the

auditor, when filed for record in the office of the recorder of deeds in the county where such company is to be located shall be *authority to commence business and issue policies,* and the same, or a certified copy thereof, shall be evidence in all suits.''

In the case of *People v. Fidelity & Casualty Co.,* 153 Ill. 25, while it concerns a foreign company doing business in Illinois, yet the interpretation by the court of the difference between the capital stock and the statutory deposits is clearly stated. The court on page 37, said:

''The capital stock of an insurance company, like that of any other incorporated company, is a trust fund. But it is a trust fund for the payment of all the debts and legal liabilities of the company, and not a trust fund simply, or even primarily, for the payment of obligations growing out of contracts of insurance. It is otherwise in respect to the deposits demanded by our statutes. They are trust funds for the benefit of the policyholders of the insurance company, and for the benefit of all the policyholders alike, regardless of class lines.''

We think from a reading of these statutes and the interpretation of the Supreme Court as to the character and purpose of these deposits, that it was the intention of the legislature that the owners and beneficiaries of policies of insurance were the only persons they intended to protect, and inasmuch as it is stated in the statute that no policies could be issued until this deposit was placed with the auditor, it should be construed that it was intended to be placed there for use in paying off insurance policies in the event the company got into financial difficulties. In other words, the legislature intended to assure the policyholders that there was a fund available to meet any legal demand by them or their beneficiaries under their contract of insurance. We do not believe the legislature had in

mind or intended that other debts or liabilities of the insurance companies such as rents, office supplies, salaries of employees, etc., should be similarly secured by this fund. The legislature apparently was concerned only with insurance for which they were authorizing the companies to issue policies, and also with the taking over and assuming of liabilities under the policies of other companies.

For the reasons herein given we think the trial court erred in holding that this fund was intended to apply to all creditors alike and that the claim of the policyholders should be a general claim. Therefore, the decree of the superior court is reversed and the cause is remanded with directions to enter a decree final in its nature, finding that the claim of the policyholders is a preferred claim, and ordering and directing its payment in due course of administration.

*Decree reversed and cause remanded with directions.*

HEBEL, P. J., and HALL, J., concur.