<hr />

## WRIGHT v. LEE, et al.

1. A *bona fide* creditor can contest the validity of an assignment made for the benefit of creditors by a corporation upon the ground that it has never been authorized by or duly executed by a duly elected board of directors, or upon the ground of fraudulent intent upon the part of those executing it, or that the statutory requirements have not been complied with in order to make a valid assignment.

2. The acts of a foreign corporation, which has not complied with the requirements of the constitution and laws of the state in relation to such corporation transacting business, owning and disposing of property, and, in case of insolvency, making an assignment of its property for the benefit of creditors, are not void and unenforceable, but such a foreign corporation may, in a direct proceeding instituted by the state, be prevented from exercising its franchises within the state until it has fully complied with the constitution and laws.

3. Article 17, § 6, of the constitution, and sections 3190, 3192, Comp. Laws, were not designed or intended as a prohibition upon foreign corporations to make lawful contracts in this state to the extent to declare such contracts void, but were merely intended to furnish the means by which citizens could procure personal judgments against them, and bring them and their property within the reach of the process and jurisdiction of our courts; thus protecting them from fraud and imposition, and affording adequate and speedy relief against either.

4. When the stockholders of a corporation, after it has been duly organized within the state of its creation, meet without the limits of the state granting the charter, and elect a board of directors, a creditor who has had voluntary dealings with and otherwise recognized the validity of the corporation cannot object to the legality of such election. The parties thus elected are directors *de facto*, and the legality of their election cannot be inquired into collaterally, without showing a judgment against it, obtained in a direct proceeding for that purpose instituted by the state, denying it the right to exercise its franchise within the state.

5. The directors are the agents of the corporation, not the corporation itself. Although they meet without the limits of the state creating the corporation, yet their proceedings will be valid and binding upon it. All persons who have had legitimate dealings with such corporation by its corporate name are precluded by their acts from denying the lawful existence of the corporation.

6. A board of directors, empowered by the charter or articles of incorporation to manage and govern the affairs of a corporation, are properly qualified to make an assignment of the property of the corporation for the benefit of creditors, when it is in failing circumstances, without obtaining the sanction of the stockholders.

7. The question of fraud and fraudulent intent in the making of an assignment can always be inquired into by any persons who may have an interest in the subject-matter of the assignment. The great and indispensible requisite in all voluntary assignments by debtors is good faith; the great and fatal objection is fraud, or the intent to defraud creditors. It is not enough that an assignment be for a valuable consideration; it must be *bona fide* also.

8. Section 4668, Comp. Laws, requires that an affidavit must be made by every person executing an assignment for the benefit of creditors, to the effect that the same is in all respects just and true, according to the best of such assignee's knowledge and belief. When the assignor is a

corporation, and the affidavit attached to the inventory is made and sworn to by the president of the corporation, "that the inventory hereto annexed is in all respects true and just, to the best knowledge and belief of deponent," and that "deponent makes this affidavit on behalf of the company assignor," it is a sufficient compliance with the requisites of the statute in relation to the affidavit.

9.  A portion of the inventory marked "G" contained a statement of some alleged difference said to be due the assignor from the bank of South Dakota in the settlement of its account with that bank, having been left out of the inventory when it was filed in the clerk's office. It was subsequently placed in its proper place in the inventory, by the president, without a special verification or filing. *Held,* in the absence of fraud in reference to this particular transaction, it was not such an irregularity as would render the inventory filed untrue or false, or vitiate it for the purpose for which it was filed.

(Syllabus by the court.    Opinion filed March 16, 1892.)

Appeal from the circuit court, Lake county.    Hon. FRANK R. AIKENS, Judge.

Action for conversion of personal property. Defendants answered justifying the taking under attachments by sheriff. Judgment for plaintiff.    Defendants appeal.    Reversed.

CORSON, Judge, concurring specially.

The facts are fully stated in the opinion.

*Bailey & Stoddard, Keith & Bates, Miller, Noyes & Miller,* and *Joy, Hudson, Call & Joy,* for appellants.

The requirements of §§ 3190 and 3192, Comp. Laws, in regard to foreign corporations doing business in this state are valid. Cook on Stockholders, (2d Ed.) § 696; 2 Morawitz on Corp. §§ 611 to 665; May on Ins. § 577; *In re* Comstock, 3 Sawyer, 218; Bank v. Earle, 13 Pet. 538; Paul v. Virginia, 8 Wall. 181; Lafayette v. French, 18 How. 407; Ducat v. Chicago, 10 Wal. 410; Rex v. Locksdale, 1 Burr, 447; Cin. Co. v. Rosenthal, 55 Ill. 90; Lester v. Bank, 33 Md. 558; Watrous v. Blaine, 32 Ia. 58; Mowing Co. v. Caldwell, Am. Law Reg. Vol. 16, No. 9, p. 554; Ins. Co. v. Elliott, 7 Sawyer, 1; Hachery v. Leary, 12 Ore. 40; Ins. Co. v. Sloughter, 20 Ind. 520; Hoffman v. Banks, 41 Ind. 1; Ins. Co. v. Thomas, 46 Ind. 44; Ins. Co. v. Harrah, 47 Ind. 236; Wood Co. v. Caldwell, 54 Ind. 270; Singer Co. v. Brown, 64 Ind. 548; Roch v. Ladd, 1 Allen, 436;

Ins. Co. v. Pursell, 10 Allen, 231; Williams v. Cheney, 3 Gray, 215; Ins. Co. v. Harvey, 11 Wis. 394. Breckett v. Hoyt, 9 Foster, N. H. 267; Buxton v. Hamblen, 32 Maine, 448; Bancroft v. Dumas, 21 Vt. 456; Boutwell v. Foster, 24 Id. 485; Gibson v. Service, 5 Yaunt, 433; 5 Barn & Ald. 335; 2 Comp. 144; Thorne v. Ins. Co., 80 Pa. St. 15, Am. Ins. Co. v. Stay, 41 Mich. 385; Pierce v. People, 106 Ill. 11; Ward v. Farwell, 97 Ill. 593; Ins. Co. v. Auditor, 101 Ill. 82; Ins. Co. v. Co., 9 Bush, 590; Farrior v. Co., 7 So. 200; Mullien v. Mortgage Co., 2 So. 201; Dudley v. Collier, 87 Ala. 431; People v. Mining Co., 105 N. Y. 76; Transacting business defined. U. S. v. Telephone Co., 29 Fed. 17; Goddard v. Chaffee, 2 Allen, 395; People v. Commissioners, 23 N. Y. 242; Warren v. Shook. 91 U. S. 704; Pembina v. Pennsylvania, 125 U. S. 181; Toledo v. Thomas, 11 S. E. 37; Am. Co. v. Moore, 2 Dak. 28; Cooper Co. v. Ferguson, 113 U. S. 727; Bank v. Owens, 2 Peters, 527.

The courts of many states have not looked with favor upon corporations organized to do business in another state than that of its incorporation. Trust Co. v. County Com'rs. 6 Kan. 245; Sedg. Stat. and Const. Law, 69; 4 Wheat. 636; 13 Peters, 520. If a private corporation hold meetings at which business is transacted in another state than that where created such acts are void and of no effect. 20 Ind. 292; 27 Me. 509; 20 Ind. 492, Hill v. Beach, 12 N. J. Eq, 31; Camp v. Byrnes, 41 Mo. 525; Hilles v. Parrish, 14 N. J. Eq. 380; Ormsby v. Co. 56 N. J. 623.

Sections 4667-8-9 and 4671 of Comp. Laws, prescribes the necessary steps to be taken in an assignment for benefit of creditors. A correct inventory of assets must be filed. Haben v. Harshaw, 59 Wis. 403; Fort v. Co., 77 Georgia, 111; Beardsley v. Frame, 24 Pac. 721. Any tampering with such inventory after it is filed would tend to cast suspicion over the entire transaction. Fairchild v. Gynne, 16 Abbott's Pr. 23; Cook v. Kelly, 14 Abbott's Pr. 466. The assignee's bond should be approved before the title vest in him. Cohen v. Barton, 21 Atl. 63; Hanson v. Dunn, 45 N. W. 319.

The attempted assignment in the case at bar is void as

there is evidence to show that it was fraudulent. Cram v. Mitchell, 1 Sanf. Ch. 251; Currie v. Hart, 2 Sanf. Ch. 353; Reed v. Emery, 8 Paige, 417; Covert v. Rogers, 38 Mich. 363; Hodges v. Lassiter, 2 S. E. 923; McMichael v. McDermott, 17 Pa. St. 353; Wessels v. Beeman. 66 Mich. 343; Bedford v. Penney, 65 Mich. 667; Parks v. Barney, 55 Cal. 239; Connelly v. Miller, 22 Neb. 82, 34 N. W. 76; Bailey v. Johnson, 9 Colo. 395; Harris v. Burns, 50 Cal. 140. All facts and circumstances tending to show fraud should be submitted to the jury. Desberger v. Harrington, 28 Mo. App. 632; Caswell v. Harris, 13 Pac. 166; Maher v. McClellan, 8 Atl. 174; Kuykendall v. McDonald, 15 Mo. 416; Lux v. Davidson, 9 N. Y. 816; White v. Davis, 21 Atl. 187; Close v. Benjamin, 9 Atl. 51; Hess v. Hess, 117 N. Y. 306; Timmerman v. Willard, 114 Ill. 364; Lee v. Tabor, 8 Mo. 322; Rinchey v. Stryker, 28 N. Y. 45.

In the case at bar the witness Blakely being familiar with horses and their worth in the market was a competent witness to prove the value of the stock in question. Brown v. Moore, 32 Mich. 254; Hoxsie v. Co., 41 Minn. 548; Brackett v. Edgerton, 14 Minn. 134; Kennett v. Fickel, 21 Pac. 93; Wallace v. Frick, 24 Mich. 255; Printz v. People, 42 Mich, 114; McDonald v. Christie, 42 Barbour, 36; Moore v. Boylis, 10 N. Y. 62; Cantling v. Railroad, 54 Mo. 385; Bearss v. Copley, 10 N. Y. 93; Acrea v. Brayton, 38 N. W. 173; Railroad v. Ranch, 7 S. W. 341; Bischoff v. Shulz, 5 N. Y. S. 757; Whitney v. Thatcher, 117 Mass. 523; Brill v. Flagler, 23 Wend. 354; Lincoln v. Railroad, Id. 425; Lawson on Ex. and Op. Ev. pp. 14–19.

*McMartin & Carland*, for respondent.

The object of the restrictions placed on foreign corporations by our statutes is to protect parties dealing with them. Morawetz Corp. §§ 665 and 666; Ehrman v. Ins. Co., 1 McCrary 127; Ins. Co. v. Walsh, 18 Mo. 237; Clark v. Middleton, 19 Mo. 53; Ins. Co. v. Bledsoe, 52 Ala. 538; Ins. Co. v. Overholt, 4 Dillon, 288; M'f'g Co. v. Foster, 30 N. W. 166; Cooper v. Ferguson, 113 U. S. 729; Toledo v. Thomas, 11 S. W. 37. Failure to comply with such laws does not render void its transaction in such state. Fritts v. Palmer, 132 U. S. 282; Harris v. Runnels

53 U. S. 79; Reynolds v. Bank, 112 U. S. 405; Bank v. Mathews, 98 U. S. 628; Bank v. Whitney, 103 U. S. 99; Swope v. Leffingwell, 105 U. S. 103; Smith v. Schelly, 79 U. S. 358; Myers v. Croft, 80 U. S 298; Jones v. Ins. Co. 101 U. S. 622; Fortier v. Bank, 112 U. S. 439; Sherwood v. Alvis, 3 So. 308. The state is the only party that can complain of the acts of such foreign corporation. Carlow v. Aultman, 44 N. W. 873; Bank v. Mathews, 98 U. S. 621 Cross v. DeValle, 68 U. S. 13; Governeur v. Robertson, 11 Wheat. 332; Phillips v. Moore, 100 U. S. 208; Cowell v. Colorado, Id. 55; Jones v. Habershaw, 107 U. S. 174. At common law in all the states, a corporation formed under the laws of another sovereignty may carry on its business and make contracts within the state. St. Clair v. Cox, 106 U. S. 355; Morawetz Corp. §§ 359, 961; Boone Corp. § 66; Green's Brice's Ultra Vires, p. 442, 2nd Ed.; Railroad v. Cowdry, 11 Wall. 476; Arnis v. Conant, 36 Vt. 755; McCall v. Co., 6 Conn. 435; Smith v. Alford, 63 Barbour, 423; Bellows v. Todd, 39 Iowa, 217; Bassett v. Co., 15 Nev. 293; Richold v. Hotel, 106 Ill. 439; Nord Co. v. King, 45 Ga. 40; Railroad v. McPherson, 35 Mo. 13.

There being nothing in the charter or general statutes prohibiting, the directors of a corporation may make a general assignment for the benefit of creditors without the sanction of the stockholders. Chew v. Ellingwood, 86 Mo. 273; Shultz v. Cutler, 13 Mo. App. 137; Dana v. Bank, 5 W. & S. 223; DeCamp v. Alward, 52 Ind. 468; Cotton v. Eagle, 6 Conn. 233; Town v. Bank, 2 Dougl. 530; Bank v. Ellicott, 6 Gill. & J. 363; State v. Bank, Id. 206; DeRuyter v. St. Peters, 3 Barb. Ch. 119; 3 N. Y. 238; Lennox v. Roberts, 2 Wheat. 373; Burrill on Assignment, § 64; Ang. & Ames Corp. § 191; Hurlburt v. Carter, 21 Barb. 221; Ringo v. Bank, 13 Ark. 563; McCallie v. Walton, 37 La. 612; Flint v. Co., 12 N. H. 435; Gilson v. Golthwaite, 7 Ala. 281; Bull v. Buckingham, 6 Ia. 296; Mahoning v. Bank, 14 Otto, 192; McGargill v. Co., 4 Watts & S. 425; Bank v. Gardner, 8 Biss. 537; Dispatch v. Co., 12 N. H. 205; Hassy v. Smith, 25 L. Ed. U. S. 314.

*De facto* officers may act for and bind a corporation. Bank

v. Barnett, 32 N. J. Eq. 236; Charitable v. Baldwin, 1 Metc. 359; Green v. Cady, 9 Wend. 414; Morawetz on Corp., §§ 638–9; Beecher v. Railroad, 45 Mich. 103; Green v. Whiten, 69 N. Y. 328.

A sale and conveyance to a trustee, agent or any person in a fiduciary capacity, is voidable only at the instance of an interested party. Bank v Railroad, 8 Ia. 277; Davour v. Fanning, 2 Johns Ch. 252; Bostwick v. Atkins, 3 Conn. 53; 1 Parson's on Cont. 75; 1 Lead. Cases in Equity, 167; McGregor v. Gardner, 14 Ia. 326; Hawley v. Cramer, 7 Conn. 717; Edmunson v. Welsh 27 Ala. 578; Hannah v. Carrington, 18 Ark. 85; Greenleaf v. Queen, 1 Pet. 138; Wightman v. Doe, 24 Miss. 675.

BENNETT, J. This action was originally brought by the plaintiff, as assignee of the La Belle Ranche Horse Importing Company, to recover for the alleged conversion by the defendant William Lee, as sheriff of Lake county, of certain goods, merchandise, and property, taken by him from the possession of the plaintiff, the same being the assigned property. The balance of the defendants are the indemnitors of the sheriff. The defendants in their answer justify the taking of the property by the sheriff under several attachments and executions against the assignor. The answer sets forth the proceedings taken to procure the attachments, showing the compliance with the statutory conditions pertaining to the issuing of those processes; also the proceedings in the circuit court against the assignor in several actions whereby judgments were regularly obtained against it. The answer further alleges that the plaintiff had no other right, title, or interest in said property, or any part of it, except alleged to be derived from a certain assignment made by the assignor on the 10th day of January, 1890, and that said assignment is void as to all *bona fide* creditors—*First*, because the assignor was a foreign corporation, which had not complied with the constitution and laws of this state in relation to foreign corporations; *second*, because the alleged assignment was not authorized by the stockholders of the corporation, nor executed by a duly elected or qualified board

of directors of the corporation; *third,* because it was fraudulent, and was made to hinder, delay, and defraud creditors; *fourth,* because no inventory was ever filed, or affidavit made and attached to it, as required by law.

At an early stage of the trial, and before the defendants had entered upon their defense, the court ruled, on several objections to the introduction of evidence, in substance, that the defendants would not be permitted to raise any question as to the validity of the assignment, and all questions relating to its validity were withdrawn from the jury. At the conclusion of the evidence the court instructed the jury that "for the purposes of this case, in this court, the ruling has been, and it will govern you, that this assignment is valid in all respects; that George L. Wright was the owner, by reason of that assignment of the property on the 4th day of February, 1890, and is entitled to recover from William Lee and the American Exchange Bank, who indemnify and acted with him in the seizure of the property, whatever you, in your judgment, shall find that property was worth." Whatever doubt may arise as to whether a foreign corporation can make a valid assignment of its property in a state where it has not complied with the constitution and laws of that state in regard to doing business in it, and as to whether that question can be raised by parties who have recognized the validity of the corporation by dealing with it, there certainly can be no question of the right of a *bona fide* creditor of such corporation to contest the validity of such an assignment upon the ground that it has never been authorized by, or duly executed by, a duly-elected board of directors, or signed by the proper officers of the corporation; or, if so authorized and properly executed, that the fraudulent intent in making it may not be inquired into; or, if neither of these, that the statutory requirements have not been complied with in order to make a valid assignment. A corporate body, as well as a private individual, when in failing circumstances and unable to redeem its paper or pay its debts, may, even without any statutory provisions and upon general principles of equity, assign its property to a trustee, in trust to collect its

debts, pay and distribute its assets to lawful creditors, and may exercise that right to the same extent and in the same manner as a natural person, unless restricted by its charter or some statutory provision. Catlin v. Bank, 6 Conn. 233; Buell v. Buckingham, 16 Ia. 285; Ringo v. Biscoe, 13 Ark. 563; Ang. & A. Corp. (10th Ed.) § 191; Covert v. Rogers, 38 Mich. 363; Shockley v. Fisher, 75 Mo. 498. When an assignment has been made by either a private individual or corporation, in case of apparent fraud or illegality, the course is sometimes adopted by creditors of treating it as a nullity, and proceeding as though it had not been made, or it may be assailed by a direct proceeding in a court of competent jurisdiction for the express purpose of having it judicially declared to be void. The assignment in the case at bar was treated by the attaching creditors as a nullity.

The first question for consideration will be, can the La Belle Ranche Horse Importing Company, being a foreign corporation which has not complied with the constitution and laws of the State of South Dakota in relation to such corporations, transact business, own and dispose of property, and, in case of insolvency, make within this state a valid assignment of its assets for the benefit of creditors? It is conceded that this company has made no attempt to comply with the provisions of the constitution or the statutes in relation to foreign corporations, and the proofs show that, for over four years prior to the making of the alleged assignment in question, the assignor of the plaintiff, in defiance of the laws of the state, transacted a large portion of its business, amounting to many thousands of dollars, within this state. No business was done by the company in the State of Minnesota, where it was incorporated, excepting holding an occasional stockholders' meeting at a room in some hotel, or at the office of an attorney in the town of Albert Lee. In all respects the ordinary business of the corporation was transacted in this state, the same as it would have been done if it had been formed under its laws. The alleged assignment was made in South Dakota by officers elected at a meeting of directors held in this state. It is generally conceded as law

that no state has the power to create corporations, or to regulate their powers, or to authorize the exercise of corporate franchises in another state. It may confer powers in the nature of a commission, to be exercised anywhere upon condition that their exercise be assented to by the state or sovereignty where their exercise is sought; but without this assent, express or implied, such powers would be nugatory outside the state granting them. Each state, by its own legislature, must determine for itself all such questions of public policy arising within its limits. But upon the principle of comity, which is a part of the voluntary law of nations recognized, to a greater or less extent, by all civilized governments, effect is frequently given in one state or country to the laws of another in a variety of ways, especially upon questions of contracts, rights of property, and rights of actions connected with or depending upon such foreign laws. If this were not done, commercial and business intercourse between the people of different states and countries could scarcly exist. Among the states of the Union, the relations and intercourse of its citizens are more intimate than those of what may be more strictly called "foreign states." Commercial and business enterprises can scarcely be called "foreign intercourse." State lines are not regarded by the people as much more than county or township lines, where they define a public policy or one in which the welfare of the general people is at stake. If we read aright, such has been the general course and tendency of the judicial decisions in the several states. Especially has this comity been generally admitted and administered in reference to corporate rights and interests. The rule seems to be well settled that the corporate existence, rights of making and enforcing contracts, of acquiring property and transacting business, (not requiring the exercise of official corporate action,) of a corporation created by the laws of one state, will be recognized and protected in another, subject only to the qualification that the enjoyment and exercise of such rights shall not be contrary to the laws or settled policy of the state in which they are sought to be enjoyed or exercised, or prejudicial to the interests of such state

or its citizens. As was well observed by Judge Story in his Conflict of Laws, §§ 35, 37, in reference to questions of this kind, wherein he fully approves of the principles announced by the supreme court of the United States in the case of Bank v. Earle, 13 Pet. 589: "In the silence of any positive law affirming or denying or restraining the operation of foreign laws, courts of justice presume the tacit adoption of them by their own government, unless they are repugnant to its policy or prejudicial to its interests. It is not the comity of the courts, but the comity of nations, [states,] which is administered and ascertained in the same way, and guided by the same reasoning, by which all other principles of municipal law are ascertained and guided."

As the question is not, then, the comity of the courts, but that of the state, and is upon the adoption or qualified adoption in the state of the laws, or, rather, the incidents growing out of the laws, of Minnesota in relation to corporations, it follows that the power of determining the question whether and how far, or with what modification, or what conditions, the laws of that state, or any right depending upon them, shall be recognized here, belongs to the legislature or law-making power; and that the judiciary whose province is to declare the law, and not make it, must be guided in their decision by the principles and policy adopted by the legislature in reference to the question; and, in ascertaining what the legislative policy is, we must be guided, not only by such express provisions as they have chosen to make, and the natural implication from them, but also by what has not been expressed in the enactment. Williams v. Creswell, 51 Miss. 818. A corporation, being the creature of positive law, has such powers as are conferred upon it, and it can make any lawful contract, expressly or by necessary implication, authorized by its charter. In the case at bar it is not claimed but that the company had the power to make contracts in relation to holding property, buying and selling the same, and could, by its agents, enter into other states than that of its domicile. If, then, it is claimed that a foreign corporation cannot make a lawful contract in this state which is

within the scope of its corporate power, we must be referred to some positive law declaring a prohibition or regulating that right. The appellants' contention is that that the constitution and the statutory laws prohibit foreign corporations from doing business in this state until they have complied with the terms of admission, and that all contracts made before such compliance are void. The constitution of the state provides that "no foreign corporation shall do any business in the state without having one or more known places of business, and an authorized agent in the same upon whom process may be served." Art. 17, § 6. The provisions of the Comp. Laws of 1877, in regard to the transaction of business within the state by foreign corporations, are as follows: "Sec. 3190. No corporation created or organized under the laws of any other state or territory shall transact any business within this territory, or acquire, hold, and dispose of property, real, personal, or mixed, within this territory, until such corporation shall have filed in the office of the secretary of the territory a duly-authenticated copy of its charter or articles of incorporation, and shall have complied with the provisions of this article; provided, that the provisions of this act shall not apply to corporations or associations created for religious or charitable purposes solely." "Sec. 3192. Such corporations shall appoint an agent who shall reside at some accessible point in this territory, in the county where the principal business shall be carried on, duly authorized to accept service of process, and upon whom service of process may be made in any action in which said corporation may be a party; and service upon such agent shall be taken and held as due service on such corporation. A duly-authenticated copy of the appointment or commission of such agent shall be filed and recorded in the office of the secretary of the territory and register of deeds of the county where said agent resides, and a certified copy thereof by the secretary or register of deeds shall be conclusive evidence of the appointment and authority of such agent."

In support of the contention of the appellants we are cited to a large number of decisions based upon statutes similar to

the one above quoted. Among the first that was rendered, and which has now become the leading case, is that of Bank v. Earle, 13 Pet. 588. Chief Justice TANEY, in delivering the opinion of the court, said: "A corporation can have no legal existence out of the boundaries of the sovereignty by which it is created. It exists only in contemplation of the law, and when that law ceases to operate, and is no longer obligatory, the corporation can have no existence. It must dwell in the place of its creation, and cannot immigrate to another sovereignty. But, although it must live and have its being in that state only, yet it does not by any means follow that its existence will not be recognized in other places, and its residence in one state creates no insuperable objection to its contracting in another. * * * It is sufficient that its existence as an artificial person in the state of its creation is acknowledged and recognized by the laws of the nation where the dealing takes place, and that it is permitted by the laws of the place with which it is endowed. Every power, however, of the description of which we are speaking, which a corporation exercises in another state, depends for its validity upon the laws of the sovereignty in which it is exercised, and a corporation can make no valid contract without their sanction, express or implied." In Oregon, Section 8 of the act of October 21, 1864, provides: "A foreign corporation, before transacting business in this state, must duly execute and acknowledge a power of attorney, and cause the same to be recorded in the county clerk's office of each county where it has a resident agent." The purpose of this requirement is declared in the ninth section of the act to be to secure the appointment of an attorney authorized to receive service of process so as to enable the citizens or inhabitants of Oregon to sue in the courts of that state, thereby avoiding delay and expense in any litigation that may be necessary with such foreign corporations. This law was construed by the United States court for the district of Oregon in the case of *In re* Comstock 3 Sawy. 218. In that case Judge DEADY, in an exhaustive opinion, says: "Two questions appear to rise. (1) Does the Oregon statute prohibit the trans-

action of business therein by a foreign corporation until its requirements are complied with? (2) Is the assignee estopped to show a want of compliance by the bank with the statute because the bankrupts were parties to the transaction alleged to have been done in violation of it?" After stating the principles of law in relation to foreign corporations transacting business outside their own domicile, as laid down in Bank v. Earle, and Story in his Conflict of Laws, *supra*, and those approved by Mr. Justice FIELD in Paul v. Virginia, 8 Wall. 181, and in the case of Lafayette M. Co. v. French, 18 How. 407, and Ducat v. City of Chicago, 10 Wall. 410, he says: "The bank, then, has no power to make a contract within this state without its permission or assent. If the state is silent on the subject, by the comity of nations its permission is presumed, unless it would be contrary to its policy or interest. But the state has spoken on the subject, and given its consent to the transaction of business within its jurisdiction by the bank, not absolutely, but upon condition or a limitation. This condition or limitation is found in the first clause of Section 8 of the act aforesaid.   *   *   *   The state, having this right to permit the bank to do business within its limits or not, with or without terms, has seen fit, for the security of its citizens, to require the execution and record of this power of attorney before the transaction of such business.      *   *   *   *   It follows, of course, from these premises, that the bank had no power to contract in the state until it had complied with the terms upon which the permission to do business was granted. It was required to perform the condition before it transacted business. But it is said that this statute is directory, and therefore the acts of the foreign corporation, done in disregard of it, are not illegal and void. It is the duty of a court to give effect to the intention of the legislature as far as practicable, and such intention should be ascertained from the words used in the statute, and the subject matter to which it relates. The words of this act are certainly mandatory in form. Before transacting any business the corporation must appoint an attorney. Lan-

guage could not be plainer. The purpose of the act is apparent. As has been said, it is to secure the people of the state the right to sue the foreign corporation in the courts of the state; but, unless the attorney is appointed before the business is transacted, it will not be attained." The court then held the contract under consideration illegal and void. In the case of Sample, v. Bank, 5 Sawy. 88, Judge DEADY, again construing the same statute, reaffirmed his former decision, in more emphatic terms, if possible.

In the case of Bank v. Page, 6 Or. 431, the supreme court of Oregon passed upon the same statute, and upheld it, and said: "We regard all these provisions of the statute wise and necessary, and we think they should be so construed as to give them force and effect. It was suggested in the argument of this case that a contract, made in violation of some of its provisions, is not necessarily void. Some authorities were cited which give countenance to this view of the law. We think that in some cases it may be true. The general rule is that a contract in violation of law is void." These decisions upon the Oregon statute have been reaffirmed in the case of Insurance Co. Elliott, 7 Sawy. 18, 5 Fed. Rep. 225, and in the case of Hacheny v. Leary, 12 Or. 40, 7 Pac. Rep. 329.

In Illinois it was enacted that "it shall not be lawful for any agent or agents of any insurance company incorporated by any other state than the State of Illinois, directly or indirectly, to take risks or transact any business of insurance in this state without first producing a certificate of authority from the auditor of the state. Public Laws of 1855, p. 46. The statute also imposed a penalty for a violation of its provisions. The supreme court held that a promissory note, given to an insurance company which had not complied with the statute, was void, and could not be enforced. Assurance Co. v. Rosenthal, 55 Ill. 85, 91. Justice WALKER, in delivering the opinion, says: "When the legislature prohibits an act, or declares that it shall not be lawful to perform it, every rule of interpretation must say that the legislature intended to interpose its power to prevent the act, and, as one of the means of its prevention, that the courts

shall hold it void. This is as manifest as if the statute had declared that it should be void." See, also, Pierce v. State, 106 Ill. 11.

The same rule was applied in Wisconsin, under a similar statute. Insurance Co. v. Harvey, 11 Wis. 394. In Indiana an act applicable to foreign corporations provides that "such foreign corporations shall not enforce in any of the courts of this state any contract made by their agents, or by persons presuming to act as their agent, before compliance * * * with the provisions of Sections 1 and 2 of this act." It was decided by the supreme court that, while contracts made by foreign corporations which had not complied with the statute were valid, the corporation could not sue on such contracts until after the statutory requirements had been fulfilled, and that the company's right to sue must be pleaded in abatement. Mowing etc. Co. v. Caldwell, 54 Ind. 270; Smith v. Little, 67 Ind. 549; Daly v. Insurance Co. 64 Ind. 1; Manufacturing Co. Efflinger, 79 Ind. 264; Elston v. Piggott, 94 Ind. 14. This act was superceded, as to foreign corporations, by the act of 1865, which prohibited such companies and their agents from doing business within the state until certain conditions had been complied with, and a certificate obtained from the auditor of the state. It was decided by the supreme court that this statute did not merely affect the right to sue in the courts of the state, but that contracts made before complying with the prescribed conditions were absolutely void by force of the statute. Hoffman v. Banks, 41 Ind. 1; Insurance Co. v. Thomas, 46 Ind. 44. In Massachusetts, Pennsylvania, Michigan, and Kentucky, a similar doctrine has been laid down in their courts construing statutes relating to foreign corporations. Roche v. Ladd, 1 Allen, 436; Insurance Co. v. Pursell, 10 Allen, 231; Williams v. Cheney, 3 Gray, 215; Insurance Co. v. Harvey, 11 Wis. 394; Brackett v. Hoyt, 29 N. H. 264; Buxton v. Hamblen, 32 Me. 448; Bancroft v. Dumas, 21 Vt. 456; Thorne v. Insurance Co. 80 Pa. St. 15; Scott v. Duffy, 14 Pa. St. 20; Insurance Co v. Stoy, 41 Mich. 385, 1 N. W. Rep. 877; Pierce v. State, 106 Ill. 11; Franklin Ins. Co. v. Louisville & A. Packett Co., 9 Bush. 590.

State statutes imposing restrictions upon foreign corporations have been held valid by the supreme court of the United States, unless the limitations or conditions arise when a corporation is in the employ of the federal government, or where its business is strictly commerce, interstate or foreign. Milling Co. v. Pennsylvania, 125 U. S. 181, 8 Sup. Ct. Rep. 737; Lumber Co. v. Thomas, (W. Va.) 11 S. E. Rep. 37; Manufacturing Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. Rep. 739.

While the general rule is that a contract prohibited by statute is void, and if a statute provides a penalty for doing an act any contract under such a statute is invalid, whether it be so declared or not, yet, as Judge FRAZIER says in the case of Deming v. State, 23 Ind. 416: "The rule is properly applied only where the reason upon which it is founded exists. The law ceases with the reason thereof, and it is a grave error to regard it as a merely arbitrary rule applicable to all contracts which are prohibited by statute. It is generally applicable because the thing prohibited is immoral or against public policy.." In Insurance Co. v. Robinson, 25 Ind. 539, GREGORY, J., in delivering the opinion, says: "It is urged in argument that the complaint is bad for not showing a compliance by the local agent of the company with the requirements of the act respecting foreign corporations and their agents." "It is contended, under the law, that all contracts of foreign corporations are void, and that the exception to the rule is when they comply with its provisions. * * * We do not so regard that statute." The opinion then speaks approvingly of the principle asserted touching contracts prohibited by statute, and then proceeds: "It would seem to follow that the contracts of a foreign corporation, made in violation of a statute made for the protection of our citizens, would not, as to the latter, be void."

Thus it will be seen that there are many exceptions to the general rule, and the question is, how shall a court determine whether a case is within or without the rule? In the case of Harris v. Runnels, 12 How. 79, Mr. Justice WAYNE, in delivering the opinion of the court, said: "That legislators do not

think the rule of universal obligation, or that upon grounds of public policy it should always be applied. is very certain; for, in some statutes, it is said, in terms, that such contracts are void; in others, that they are not so. In one statute there is no prohibition expressed, and only a penalty; in another, there is prohibition and penalty, in some of which contracts in violation of them are void or not, according to the subject-matter and object of the statute; and then there are other statutes in which there are penalties and prohibitions in which contracts made in contravention of them will not be void, unless one of the parties to them practices fraud upon the ignorance of the other. It must be obvious, from such diversities of legislation, that statutes forbidding or enjoining things to be done, with penalties accordingly, should always be examined before courts should refuse to give aid to enforce contracts which are said to be in contravention of them."

In the case of Pangborn v. Westlake, 36 Iowa, 548, Justice COLE says: "We are therefore brought to the true test, which is that while, as a general rule, a penalty implies a prohibition, yet the courts will always look to the language of the statute, the subject-matter of it, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment; and if, from all these, it is manifest that it was not intended to imply a prohibition or to render the prohibited act void, the courts will not so hold and construe the statute accordingly." See, also, Howell v. Stewart, 54 Mo. 400; Bank v. Hale, 59 N. Y. 53; Manufacturing Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. Rep. 739; Sherwood v. Alvis, (Ala.) 3 South. Rep. 208. The case of Bank v. Mathews, 98 U. S. 628, was where a national bank had accepted a note and a deed of trust as security for a loan of money, contrary to the provisions of the national banking act. Justice SWAYNE, in delivering the opinion, says: "The statute does not declare such security void. It is silent upon the subject. If congress so meant, it would have been easy to say so, and it is hardly to be believed that this would not have been done, instead of leaving the question to be settled by the uncertain result of litigation and judi-

cial decision. * * * When a corporation is incompetent by
its charter to take title to real estate, a conveyance to it is not
void but only voidable, and the sovereign alone can object. It
is valid until assailed by direct proceeding instituted for that
purpose. * * * * The impending danger of judgment of
ouster and dissolution was, we think, the check, and none other
contemplated by congress. That has always been the punish-
ment prescribed for a wanton violation of a charter, and it may
be made to follow whenever the public authority shall see fit
to invoke its application. A private person cannot, directly or
indirectly, usurp the functions of the government." To the
same effect is the case of Bank v. Whitney, 103 U. S. 101, with
this additional declaration, that, "whatever objection there may
be to it as a security for such advances from the prohibitory
provisions of the statute, the objection can be only urged by
the government; citing Fleckner v. Bank, 8 Wheat. 338.

.From these cases, and many others which could have been
produced, while there is some conflict on the question, it ap-
pears that what the legislature meant in the enactment of the
statute in relation to foreign corporations is to be inferred from
an examination of the entire act, and the intention, in every in-
stance, is to be the guide to a court in determining whether the
particular case should form an exception to the general rule.
That intention may be inferred from all its provisions in con-
nection with the subject-matter and circumstances. The object
sought to be accomplished exercises a potent influence in de-
termining the meaning of not only the principle, but the minor
provisions of a statute. To ascertain it fully, a court will be
greatly assisted by knowing the mischief intended to be re-
moved or suppressed, or the necessity of any kind which in-
duced the enactment. In the cases above cited, and in fact all
to which our attention has been called by the very able briefs
upon the part of the appellants and respondent, all say the ob-
jects of the statute under consideration are to place foreign
corporations within the reach of the process of the courts in
the jurisdiction where the corporation is doing business, and to
protect parties doing business with them from imposition, and

that the primary object is not to render their acts absolutely void. This object is clearly stated by Morawetz, in his work on corporations, (2nd Ed.) § 665, as follows: "The object of the various statutes providing that foreign corporations, before transacting business, shall comply with specified conditions, such as filing copies of their charters, making statements of their financial condition, appointing agents upon whom process shall be served, etc., is to protect parties dealing with them from imposition, and to secure convenient means of obtaining jurisdiction in the local courts. These statutes place foreign corporations in the same position as domestic corporations in the particulars provided for. It is clearly not the primary purpose of the legislature in passing these statutes to render the contracts and dealings of corporations which have not complied with the statute void and unenforceable. Hence, when the legislature has not expressly declared that this result shall follow from a failure to comply with the statute, the courts ought not to imply such a result, unless this be necessary in order to attain the primary object for which the statute was passed." This, we think, is the better and more reasonable construction of these statutes, and, unless the statute prescribing the prerequisites to the right to do business declares that contracts made by foreign corporations shall be void, the courts should not declare them to be so absolutely.

In the decisions holding the acts of a foreign corporation void when done in violation of constitutional or statutory prohibition, and when no penalties are provided for, great stress and force is placed upon the fact that to hold the acts valid would render the enactment nugatory, as there would be no way to enforce it. With this contention we cannot agree, especially within our jurisdiction. It is provided by Section 5346, Comp. Laws, that an action may be brought by any states attorney in the name of the state, on leave granted by the circuit court or a judge thereof, against any corporation, when it is claimed that it has or is exercising a franchise or privilege not conferred upon it by law. It appears from the record in case that the La Belle Ranche Horse Importing Company is a

corporation organized under the laws of the state of Minnesota, and the appellants contend that *quo warranto*, or an information in the nature of *quo warranto*, or the civil action provided by statute, cannot be maintained against it in this state, because it can be ousted of its franchises only by the sovereignty which bestowed them. Undoubtedly, the franchises which a state has conferred upon a corporation cannot be taken from it by the act of another state or by the judgments of its courts. The purpose of this action, however, is not to deprive the corporation of the franchises with which it is endowed and invested by the laws of the state creating it, but to inquire into its authority to carry on its business in this state, and, if found to be exercising its franchises in this state in contravention of the laws thereof, to oust it therefrom. There can be no doubt of the power of the legislature to prescribe the terms and conditions upon which a foreign corporation may do business in this state. That consent may be upon such terms and conditions as the legislature, under its law making power, may impose, and they may be excluded altogether, if thought to be wise. Before exercising their franchises, such corporations must comply with the conditions imposed. Without such compliance the exercise of their franchises in the state would be in contravention of the laws of the state, and the statute above quoted expressly authorizes an action by the state's attorney to determine the question. This statute is not limited to corporations organized under the laws of South Dakota, but applies to all corporations generally. We therefore hold that all corporations which are carrying on business in this state without complying with the laws, whether domestic or foreign, are exercising their corporate franchises in contravention of the law. The proper judgment in the case of a foreign corporation would be as was said in the case of State v. Insurance Co., 47 Ohio St. 180, 24 N. E. Rep. 392, "not to oust the corporation from the franchise of being a corporation, or from any of the franchises conferred on it by the law of its creation, but from the exercise of its franchise in this state." See, also, State v. Insurance Co., 39 Minn. 538, 41 N. W. Rep. 108; State v. Railroad Co., 25

Vt. 433; and People v. Trustees, 5 Wend. 211.    Aided by the light of these able decisions, endeavored to be reviewed upon both sides of the question raised in the case at bar, we have come to the conclusion that the constitutional provision and legislative enactment in our state, as quoted above, was not designed or intended as a prohibition upon foreign corporations to contract in this state to the extent to declare such contracts void, but was merely intended to furnish the means by which our citizens could procure personal judgments against foreign corporations who were their debtors.    And while the statute did in terms prohibit the transaction of business until its provisions are complied with, yet, whatever objection there might be made to a foreign corporation for non-compliance, it being a statute regulating a public policy, this objection could not be urged collaterally by a private person, but it must be done by a direct proceeding instituted by the state.    Following a well-known and established uniform rule, if a person contracts with a corporation in a matter within its corporate powers, the mere making of such contract estops the promisor from disputing the corporation's regular and complete right to make such a contract.    The distinction is between an entire absence of authority in the charter itself and a failure to comply with some prerequisite which the law has made a condition precedent to the exercise of corporate functions.    In the one case there is want of power to act; in the other, only an abuse of power conferred.

The case of Smith v. Sheeley, 12 Wall. 358, seems to us to be one in point.    The main question considered and decided was whether the Nehama Valley Bank, of Omaha, Neb., could be a lawful grantee of a lot of land.    While Nebraska was only a territory its legislature had incorporated the bank, but the act of incorporation was never approved or confirmed by congress.    By an act approved July 1, 1836, congress enacted "that no act of the territorial legislature of any territory of the United States, incorporating any bank or any banking institution with banking powers or privileges, shall have any force or effect whatever until approved and confirmed by congress."

This act was·in force when the territorial legislature incorporated the Nehama Valley Bank. The court, by its unanimous opinion, said: "It is insisted, however, as an additional ground of objection to the deed, that the bank was not a competent grantee to receive title. It is not denied that the bank was duly organized in pursuance of an act of the legislature of the territory of Nebraska, but it is said that it had no right to transact business until the charter creating it was approved by congress. This is so, and it could not legally exercise its power until the approval was obtained. But this defect in its constitution cannot be taken advantage of collaterally. No proposition is more thoroughly settled than this, and it is unnecessary to refer to authorities to support it. Conceding the bank to be guilty of usurpation, it was still a body *de facto*, exercising, at least, one of its functions which the legislature attempted to confer upon it, and in such a case a party who makes a sale of real estate to it is not in a condition to question its capacity to take title after it has paid a consideration for the purchase." To the same effect are the decisions in the cases of Insurance Co. v. McMillen, 24 Ohio St. 67; Clark v. Middleton, 19 Mo. 53.

Again, bearing in mind that the object of the statute under consideration is to bring foreign corporations within the jurisdiction of the courts of our state, and to protect our citizens from imposition and fraud, and afford them adequate and speedy relief against either, we find in the case at bar that this reason did not exist. The record shows that from the time of its organization to the time of the assignment the corporation had a principle place of business and its executive officers within this state. No difficulty has been experienced in making personal service upon it, and in obtaining valid judgments against it, and its property has at all times been within reach of the processes of the courts. If the statute, which it is said has not been complied with, had been specifically fulfilled, no greater facility could have been afforded to carry out the object of the enactment. This corporation could therefore make a valid contract, hold and dispose of property, sue and be sued,

and make an assignment of its property for the benefit of its creditors when in failing circumstances, while acting in a *de facto* capacity within this state, until ousted by competent authority. The question of the non-compliance with the statute in relation to foreign corporations, as a condition precedent to transacting business cannot be inquired into collaterally.

The next question demanding attention is, was the alleged assignment authorized by the stockholders of the corporation, and executed by a duly elected board of directors, or signed by the proper officers of the corporation? It is conceded, or at least it is not denied, that the laws of the state of Minnesota contain no prohibition upon the corporation to transact business in this state, nor was there any prohibition as to transacting the business for which it was incorporated. The business of the corporation was such as was legal and legitimate, as well in the jurisdiction of its creation as in this state, excepting the prohibition that has been heretofore discussed; and there was nothing to interfere with the full operation of the law of comity between the states in relation to foreign corporations. A corporation only acts through its agents, and any act that can be performed by the directors of a corporation, who are only its agents, may be performed anywhere if the meeting of the directors is otherwise legal. By the articles of incorporation of the La Belle Ranche Horse Importing Company, we find that "the government of said corporation and the management of its affairs shall be vested in a board of directors, consisting of not less than three and not more than five, who shall be stockholders of and in said corporation." The board of directors, then, had the exclusive power to manage the business of the company. In such cases the sole right is in the directors, and not in the stockholders as such. As was said in the case of McCullough v. Moss, 5 Denio, 575, "when a charter invests a board with the power to manage the concerns of a corporation, the power is exclusive in its character. The corporators have no right to interfere with it, and courts will not, even on a petition of a majority, compel the board to do an act contrary to its judgment. The stockholders, as such, in their collective capacity,

could do no corporate act.   The directors were their represen-
tatives, and alone authorized to act." It is, then, evident that
a board of directors who are empowered to manage and govern
the affairs of a corporation are properly qualified to make an
assignment of the property of the corporation for the benefit of
creditors, when it is in failing circumstances, without obtaining
the sanction of the stockholders to do so.

But in the case at bar it is alleged that the assignment was
made by a board of directors who pretended to hold their office
by virtue of an election by the stockholders of the company at
a meeting held in the state of South Dakota, and outside the
state of its creation, and it is claimed that that action of the
stockholders in such election was void.   Morawetz on Corpora-
tions, in Section 488, says that "there is no objection to share-
holders meeting outside of the state, providing all the share-
holders give their consent, and, in the absence of an express
statutory prohibition, there appears to be no reason why share-
holders in an ordinary business corporation should not provide
in their articles of association that meetings may be called at
convenient places outside of the state under whose laws the
company is formed."   The articles of incorporation do not
expressly provide for stockholders meeting outside of the state
of Minnesota, nor do they state where such meetings shall be
held, but it is stated that the principle place of business shall be
at Winfred, S. D.   The record of the meetings at which these di-
rectors were elected shows that the stockholders of the corpor-
ation were present or represented, and that no objection was
made to the meeting being held in Madison, S. D., or to the elec-
tion of the directors, but at this meeting the action of the direct-
ors in making the assignment was unanimously approved.   In
support of the position assumed by the appellants, they rely prin-
cipally upon the case of Miller v. Ewer, 27 Me. 517.   A close
investigation of that case, however, will show that the facts are
not similar to the one at bar.   In that case the first meeting of
the stockholders for organization was held outside the limits of
the state creating it, and no proof of the organization of the
company or for the election of its officers had ever been held in

the state of Maine. The courts, under these circumstances, held the acts of its directors void upon the ground that the corporation had no valid organization. Not so in this case. The organization, as is shown by the record, was perfected in the state of Minnesota. Officers were elected and business transacted within that state. In the case of Railroad Co. v. McPherson, 35 Mo. 13, which was an action by the corporation to recover the price of a stock subscription made by the defendant, the company was incorporated by an act of the legislature of Illinois, but it held some of its stockholders' and directors' meetings in the city of St. Louis, Mo., beyond the bounds of the state granting the charter. A recovery was resisted, among other things, by reason of this, and that the calls for stock assessments made in St. Louis, and votes cast and proceedings of stockholders and directors when assembled in that city, were wholly void. In considering the question thus raised the court said: "After the corporation became full-fledged, I see nothing in reason or principle why the stockholders could not as well elect directors as the directors elect a treasurer on the Missouri side of the line. The most that could be said under such circumstances is that the election was irregular. The corporation having once been put into exisence, if the members of the board of directors, whether charter members or their appointees or those elected by the stockholders in St. Louis, accepted their office and acted under their appointment or election, as the evidence shows was the case, they became *de facto* directors, and their authority to act on behalf of the corporation could not be questioned by the appellants in this collateral suit without showing a judgment of ouster against them in a direct proceeding by the government for that purpose.

The reasoning of this case seems to be conclusive. The laws of Minnesota, introduced in evidence, under which this company was incorporated, gave it the power to establish one or more offices without the state and to transact business thereat, provided that an office should always be maintained in that state where legal process may be served on the person in charge. The record also shows that the corporators met and

organized at Albert Lea in the state of Minnesota, and that it continued to hold corporate meetings there down to nearly the date of the assignment. This would bring the case at bar within the ruling of the last case cited, and if the election of the board of directors who executed the assignment held by the stockholders on January 10, 1890, in Madison, S. D., was an irregularity, the question remains, who can take the advantage of it? As was held in the above case, this board were "*de facto*" officers. Still, this term has led to some confusion by reason of the application of the same term to government officers and public officials holding under color of right. See Central Trust Co. v. Wabash, etc., R. Co., 23 Fed. Rep. 858. But the term rests on different principles. Directors and other managers of a private corporation are mere agents, and the corporation can be charged with their acts only in accordance with the established doctrines of the law of agency. In Dispatch Line v. Bellemy Manuf'g Co., 12 N. H. 223, PARKER, J., said: "If the election had been by a municipal corporation coming into office under color of an election, he would have been an officer *de facto*, and his acts valid so far as third persons had an interest in them. The regularity of the election would not in such a case be inquired into, except in some proceeding to which he was a party. As a director of a private corporation although called, in common parlance, an officer of the corporaation; he is not technically to be considered an officer *de facto*. He is one of the agents elected by the vote of the corporation for the management of its affairs, or some of them. But a similar rule must prevail in relation to the effects of his acts, so far as the corporation have held him out as an agent, and third persons have confided in his acts done within the scope of the authority he appears to possess." If this is the *status* of a director elected under such circumstances as would make the election an irregularity, it makes but little difference whether he is called an "office *de facto*" or an "agent." If a corporation elect a person a director who is ineligible to that office, and permit him to act as such, the corporation will be bound by the acts which he performs within the scope of the authority pos-

sessed by a director, and, as his acts cannot be questioned by the corporation, they cannot be by those who claim under the corporation or collaterally. McGargell v. Coal Co., 4 Watts & S. 425. The courts as a rule will not investigate the regularity of the election or appointment of an officer of a corporation when the corporation itself and the stockholders do not question the agent's authority. Association v. Baldwin, 1 Metc. (Mass.) 359; 23 Fed. Rep. 858, *supra;* Beecher v. Rolling Mill Co., 45 Mich, 103, 7 N. W. Rep. 695; Sugar Co. v. Whitin, 69 N. Y. 328. We cannot, therefore, hold that the action of the stockholders had at their meeting held in Madison, S. D., January 10, 1890, in electing directors, was void, but, at the most, it could only be an irregularity which cannot be taken advantage of in a collateral proceeding. We must also hold that an assignment made by the directors elected at such meeting, and in accordance with the stockholders' instructions, is valid as to third persons, unless successfully assailed upon other grounds than that of the irregularity of the election of the directors making it.

The validity of the assignment in the case at bar is assailed upon the ground that it was fraudulent, and made to hinder, delay and defraud creditors. That the question of fraud and fraudulent intent in making an assignment can be litigated in a proceeding like this suit has been too often decided by the courts to be a matter of serious doubt or controversy. The allegation of the answer is that the assignment was fraudulent, and made to hinder, delay, and defraud the creditors of the company, and was made in pursuance of a conspiracy between the assignee and one Mosher to wreck the company and possess themselves of the property. Both the assignee and Mosher were directors of the company at the time the assignment was made. On the trial it appeared that the respondent and assignee was one of the orignal incorporators of the company, and was its secretary from its organization until the date of the assignment; and at the meeting of the stockholders in Madison he was elected a director, and declined to be re-elected secretary, because he wished to be made an assignee. It also ap pears that he was a creditor of the company, and there were un

adjusted matters involving the title to valuable real estate between him and the company, and that he held title to real estate that belonged to the company upon which some of its most valuable improvements were located.    There was also evidence tending to show that respondent and Mosher, another of the directors, had entered into an agreement to possess themselves of the property of the company in fraud of the rights of creditors and other stockholders.    It was also shown on the trial that Mr. Mosher, one of the heaviest creditors and a director, was continuously urging the assignment, and threatening to attach the property if it was not made, and Wright was not selected as an assignee.    Hartranft testified that Wright, the assignee, told him that he and Mosher were partners, and that he was paying half the bills, and that they were to "pull" together, and Mosher was to furnish the money to buy the stock at the sale, and they were to run the business together, and that he (Wright) would have a sale and sell the property, and he and Mosher buy it in and be partners in the transaction.    This is shown by the evidence of E. C. Gunsolus and J. N. Hartranft. On the trial, as is shown by the instruction of the court to the jury, quoted in the beginning of this opinion, all questions as to the validity of the assignment were taken from the jury.    We think in the testimony of the above witnesses, and the circumstances surrounding the making of the assignment, that there was enough evidence introduced on the element of fraud to have had it submitted to the jury.    Under our code of laws, actual fraud is always a question of fact.    Civil Code, § 3509.    "The great and indispensible requisite in all voluntary assignments by debtors is good faith; the great and fatal objection is fraud, or the intent to defraud creditors.    It is not enough that an assignment be for a valuable consideration.    It must be *bona fide* also."    Burrill, Assignm. § 330.    What constitutes fraud is matter of law.    What is sufficient evidence of the facts required to establish it is for the jury to find.    When fraud appears on the face of the assignment, it is so declared by the court. When dependent upon external proof, it is to be found by the jury.    We think the ruling of the court on this branch of the

case was erroneous.    The general rule is that when fraud is in issue, and there is any evidence tending to support it, the question of fact should be left to the jury.

The fourth ground upon which the assignment is assailed is that the assignor did not comply with the statutory requirements in relation to making a valid assignment, for the reason that no inventory and affidavit were ever filed as required by law.    The law governing assignments for the benefit of creditors requires that the assignor shall make and file a true and full inventory of all the creditors; their place of residence; the sums owing to them, and the nature of the debt; the consideration of the liability; each existing judgment, mortgage, or other security; the exempted property of the assignor; and a list of all real and personal property, and its value, and all incumbrances on it.    This must be done within 20 days after the assignment.    The assignor must make an affidavit to be annexed to and filed with the inventory, that it is all respects true and just, according to the best of the assignor's knowledge and belief. This assignment must be recorded, and the inventory filed, with the recorder of deeds of the county where the assignor resides at the date of the assignment, or, if he did not reside in the state, with the like officer where the principal office is situated, or, if he had no residence or principal place of business, with a like officer where the principal part of the assigned property is situated.    The statute also provides that, if these requirements are not fulfilled, the assignment shall be void against creditors of the assignor, and against purchasers and incumbrancers in good faith and for value.    Sections 4667–4671, Comp. Laws.    To the inventory as filed, three objections were raised by the appellants.    *First*, that the affidavit annexed to the inventory, as originally filed, did not comply with the provisions of the statute; *second*, that the inventory, as originally filed, did not contain the matters required by the statute to be contained in it; *third*, that the inventory, as finally filed with the additional matter added, was wholly unverified.

The affidavit attached to the inventory was made by Charles

E. Place, president of the assignor company, and states "that the inventory hereto annexed is in all respects just as true, to the best knowledge and belief of deponent," and that "deponent makes this affidavit on behalf of the company assignor." The contention of the appellants is that this affidavit is not in accordance with the provisions of the statute, for the reason that while the company was the assignor, the affidavit should have shown the inventory to be in all respects just and true to the best of the knowledge and belief of the assignor, while it only shows it to be in all respects just and true to the best knowledge and belief of Place himself. This position of appellant is clearly untenable. In the absence of legislative enactments or provisions made in the by-laws, corporations usually act through their president, or those representing him. He being the legal head of the body, when an act is performed by him, the presumption will be indulged that the act is legally done. Mitchell v. Deeds, 49 Ill. 417; Kraft v. Printing Co., 87 N. Y. 628; Crowley v. Mining Co. 55 Cal. 278. In the case at bar, however, there is no need for the presumption, because the president of this company was especially authorized, in connection with the secretary, to execute this assignment. From this authority the conclusion is inevitable that they could make all necessary verifications to carry out his instructions. There can be no doubt that the board of directors may invest the president with authority to execute any legitimate instrument within the scope of the power of the board. This may be done by an express resolution or by acquiescence in a general course of dealing. Mor. Priv. Corp. § 538.

At this point, however, we are met with a seeming difficulty which has been overlooked by the attorneys for both the appellants and respondent, or has been considered by them as of but little or no importance. But, inasmuch as the point might be urged as material on a new trial ordered, we have deemed it necessary to express our views upon it, although raised upon our own motion. The resolution of the board of directors authorizes and directs the president, C. E. Place, and the secretary to make and execute an assignment of the prop-

erty of the company. The deed of assignment was executed, signed and acknowledged by both of them. No questions, then, can be raised in this particular to that instrument, but the affidavit to the inventory is made by C. E. Place alone. The question might arise whether the assignment was void because the inventory was not verified by the proper parties. Section 4668, Comp. Laws, says: "An affidavit must be made by every person executing an assignment for the benefit of creditors, to be annexed to and filed with the inventory." Section 4671, Id., says: "An assignment for the benefit of creditors is void against creditors of the assignor, and against purchasers and incumbrancers in good faith and for value, if the assignment is not recorded, and the inventory required by Section 4667 is not filed. * * *" The statute evidently places as much importance to the filing of a proper inventory as it does to the recording of a proper deed of assignment, for it declares that the failure to do either makes the assignment void as to the parties named in the statute. Section 4674 further provides that "until the inventory and affidavit required by Sections 4667 and 4668 have been made, * * * and the inventory filed, * * * an assignee for the benefit of creditors has no authority to dispose of the estate or convert it to the purposes of the trust." It might with some force be assumed that these sections in terms require that the affidavit annexed to the inventory should be made by the persons executing the assignment, and annexed to and filed with the inventory, and that a failure to do so renders the assignment void, and that, this requirement being mandatory, a strict performance of it is a condition precedent to the taking effect and validity of the assignment. It appears, however, to us that the most natural and reasonable construction of this section is that, inasmuch as the oath taken and affidavit attached are not constituent parts of the inventory or of this list of property of the assignor, but are extraneous and distinct from them, and are merely the verification of them, they do not in any sense affect the essential qualities or character of the inventory, or make it any more correct or perfect than it is inherently without the affidavit. The stat-

utes requires—*First*, that a correct inventory shall be made by the assignor; and *second,* that it shall be filed in the manner prescribed by Section 4669. The inventory must contain the requisites of Section 4667. The filing is governed by Section 4669. Neither of these make any reference to the affidavit mentioned in Section 4668. Whether this requirement is mandatory or not, and must be strictly performed in order to render the assignment valid, is equally questionable. This must be determined by the usual rules for determining such questions.

Sutherland, in his work on Statutory Construction, (Section 447,) says: "When a statute is affirmative, it does not necessarily imply that the mode or time mentioned in it are exclusive, and that the act provided for, if done at a different time or in a different manner, will not have effect. Such is the literal implication, it is true; but since the letter may be modified to give effect to the intention, namely, that the legislature intends what is reasonable, and especially that the act shall have effect; that its purpose shall not be thwarted by any trivial omission, or a departure from it in some formal, incidental, and comparatively unimportant particular." Judge Cooley, in his admirable work on Constitution limitations, (page 93,) gives the following rule for determining whether statutes are mandatory or directory: "Those directions, which are not of the essence of the thing to be done, but which are given with a view merely to the orderly and prompt conduct of the business, and by a failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and if the act is performed, but not in the time or in the precise mode indicated, it may still be sufficient if that which is done accomplishes the substantial purpose of the statute."

In respect to the requirements of the assignment statutes relating to the inventory, it seems that the essential thing to be done or the substance of the thing to be provided for, "is the making and filing of a correct inventory of the assets of the assignor within 20 days after the execution of the deed of as-

signment. The creditors are concerned and interested in this alone. It is essential that it should be as correct as possible, and be filed within the time for the information of all concerned. Yet neither the oath nor affidavit of the assignor could make it more complete or correct, or be more conclusive evidence that it was correct, or add anything to it in any essential particular, or be of any benefit to any one. The verification might be a sanction or pledge binding on the conscience of the assignor as an evidence of his good faith in making the inventory. It is but a mere formality, so far as any practical effect or beneficial use is concerned, for the inventory could be shown to be incorrect or incomplete if it was so, as well with or without the affidavit. In the case before us the affidavit of Place alone shows an attempted compliance with the statute, and, as far as he is concerned, does comply with it; and we are led to the conclusion that the failure of the secretary to affix his affidavit to the inventory, his failure being a comparatively unimportant requirement, does not invalidate an otherwise valid assignment.

As to the inventory. It appears from the undisputed evidence that, after the assignment was made and filed, an inventory, verified as stated above, was filed in the register of deeds office of Lake county. After this, Place took the inventory from the files, and took it apart, and inserted five pages of additional matter, containing a list of other personal property belonging to the assignor company. It was then returned to the register of deeds without an additional verification. A close inspection of the record in the case discloses the fact that the assignor company had large dealings with the Bank of South Dakota previous to the assignment, and at this time there were a large number of notes that had been left by the company in the hands of the bank for collection or otherwise, which had been paid, to be accounted for by the bank. In accounting for them there was some differences claimed by the company as errors in the calculations upon the amounts due on the notes and the amount collected, and it was holding the bank for this difference. When the first inventory was filed, the assignor made the following statement in relation to these notes:

"Against the ten notes first above owing to the Bank of South Dakota there are a number of claimed errors or unexplained differences. The particulars we are unable to give, but the purported lists are hereto attached as Schedule G, none of which are in the possession of the corporation, and no vouchers for the same." It was this Schedule G that was put in the inventory after it was filed in the office of the register of deeds. Evidently it was intended to have been placed in it when it was first filed, as the above extract from the inventory clearly indicated. The inventory, so far as this case is concerned, must be presumed to have been verified as if this schedule was attached when it was filed. There is no fraud urged in reference to this particular transaction. If any inference can be drawn from it, it rather shows an honest effort to comply with the law. There was no endeavor to conceal or keep back property belonging to the assignor, or suppress information in relation to the property standing of the company.

It is unnecessary to review the alleged errors in relation to the exclusion of evidence relative to the value of the property taken, because for the error of the trial court in excluding from the jury the evidence tending to show fraud in making the assignment, and that it was made to hinder, delay, and defraud creditors, the cause must be reversed and remanded for a new trial; and it is so ordered.

KELLAM, P. J. I concur in the decision of this case as to reversal. I am not, however, entirely satisfied that Section 4668, Comp. Laws, requiring the assignor to make, attach to, and file with the inventory an affidavit, in verification of the same, should be regarded as directory only; and, if not,—if the affidavit is indispensable to make the inventory complete under the statute,—then I am not fully satisfied that the affidavit made by the president alone was sufficient, where the authority to make and execute the assignment had been expressly and especially conferred by resolution upon the two officers, president and secretary. As this particular question was not argued, I prefer to reserve my opinion.

CORSON, J. I concur in reversing the judgment of the court below on the ground that the court erred in not submitting the question of actual fraud in the assignment to the jury. On the other questions discussed I express no opinion.