## AMERICAN COPYING CO. v. EUREKA BAZAAR.

Under Rev. Civ. Code, §§ 883, 885, as amended in 1895 (Laws 1895, p. 52, c. 47), providing that no foreign corporation shall maintain any action in a court of the state on any contract made in the state, unless such corporation "shall have fully complied" with the statute, the right of action on a contract is lost, unless the statute was complied with before the contract was entered into.

Corson, J., dissenting.

(Opinion filed, June 13, 1906.)

Appeal from Circuit Court, McPherson County. Hon. LORING E. GAFFY, Judge.

Action by the American Copying Company against the Eureka Bazaar. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

*Taubman, Williamson & Herreid,* for appellant.

The failure of a foreign corporation to comply with the laws of this state requiring it to file its articles of incorporation are matters of defense which must be set out and alleged in the answer. Acme Mercantile Agency v. Rochford, 10 S. D. 203. This particular transaction being an isolated transaction and no proof to show that the plaintiff was transacting business within the state beyond the simple fact of taking this particular contract, which would not constitute doing business or transacting business within this state. Fuller & J. Mfg. Co. v. Foster, 4 Dakota 329. Where a penalty is imposed for non-compliance by the statute it must be deemed exclusive of all others. Fritz v. Plummer, 132 U. S. 283. Mortgage

Trust Co. v. Willhart, 84 Fed. 514; LaFranz Engine Co. v. Mt. Vernon, 9 Wash. 144, 37 Pac. 287; 13 Am. & Eng. Enc. Law, 875.

*James M. Brown,* for respondent.

Section 883, Revised Civil Code, provides: "No corporation created or organized under the laws of any other state * * * shall transact any business within this state, * * * or sue or maintain any action at law or otherwise, in any of the courts of this state, until such corporation shall have filed in the office of the secretary of state a duly authenticated copy of its charter or articles of incorporation," and section 885 provides: "Such corporation shall appoint an agent who shall reside at some accessible point in the state * * * that no action shall be commenced or maintained in any of the courts of this state by such corporation on any contract, agreement or transaction made or entered into in this state, by such corporation, unless such corporation shall have fully complied with the provisions of this article. * * * It shall be unlawful for any person to act as agent or officer of any foreign corporation unless such corporation shall have appointed an agent." And the acting as such agent or officer is made a misdemeanor. The language of the sections quoted is clear and un-ambiguous, and the legislative intent is to deprive foreign corporations, who would not come within the purview thereof; would not place themselves on a parity with our own corporations, and subject themselves to the jurisdiction of our courts, of the right to transact business or hold any property within the state, and to sue or maintain any action upon any contract made in this state in defiance of our laws. Iowa Falls Mfg. Co. v. Farrar, 104 N. W. 449. The contract in this case having been made prior to the compliance with the law by the plaintiff, is, under the first penalty provided in the law, non-enforceable in the courts of this state. This same statute is in some form or other upon the statute books of most of the states, and it appears to be uniformly held to be a proper regulation of foreign corporations seeking to transact business outside of the state of their domicile, and contracts made in defiance of such statutes are declared to be either void, non-enforceable, or subject to enforcement only after the submission of the non-complying corporations to the statutory requirements, it all depending on the language of the particular statute under consider-

ation.   Wright v. Lee et al., 2 S. D. 596;  Ashland Lumber Co. v.
Detroit Salt Co. 89 N. W. 904;  Brewing Co. v. Piemeisl, 88 N. W.
441;  Sherman Nursery Co. v. Aughenbaugh, 100 N. W. 1101;
Deere v. Wyland, 76 Pac. 863;  Keystone Distiller Co. v. Superior
Court 72 Pac. 398;  Seaman v. Temple Co., 63 N. W. 408;  Pioneer
Savings & Loan Co. v. Eyer, 87 N. W. 1058;  Acme Mercantile
Agency v. Rochford, 10 S. D. 203;  Bradley, Metcalf & Co. v. Arm-
strong, 9 S. D. 267;  Iowa Falls Mfg. Co. v. Farrar, 19 S. D. 632,
104 N. W. 449;  6 Thomp. Cor. §§ 7959-7960;  Hanchey v. South-
ern Bldg. & L. Assoc., 37 So. Rep. 272.   A foreign corporation
must comply with sections 883-885 of the Revised Civil Code be-
fore making a contract or bringing suit in this state.   Bradley, Met-
calf & Co. v. Armstrong, 9 S. D. 267;  Iowa Falls Mfg. Co. v.
Farrar, 19 S. D. 632;  104 N. W. 449.   The appellant not having
attacked the pleading in the court below either by demurrer, mo-
tion or otherwise, and having voluntarily submitted evidence upon
the issues sought to be raised by the answer will be deemed to
have waived any deficiency therein, and can not be heard thereon
in this Court.   Johnson v. Burnside, 3 S. D. 230;  Lindsley v. Pet-
tigrew, 5 S. D. 500;  People v. Swift, 31 Pac. 16;  Stow v. Allen,
98 N. W. 141;  Bruce v. Doble, Id. 416;  Strait v. Eureka, 96 N.
W. 695;  Klopper v. Levy, 33 Pac. 444;  White v. Railroad Co., 50
Cal. 419;  § 139, Rev. Code Civ. Proc.   A party who has treated
an indefinite or uncertain allegation, or one which might be deemed
a conclusion of law as sufficient by taking issues on it and going
to trial, will be deemed to have waived the objection.   Abb. Trial
Brief § 535.

FULLER, P. J.   On the 13th day of January, 1903, plaintiff,
a foreign corporation, commenced this action on contract in the
name of William B. Graham and Alonzo L. Utz, as copartners do-
ing business under the firm name and style of the American Copy-
ing Company, but, after the answer was served and the case noticed
for trial at the June, 1903, term, leave was applied for and obtained
to amend the verified complaint by alleging plaintiff's corporate
capacity by virtue of the laws of Illinois.   By the terms of such
contract, which was executed in this state September 8, 1902, with
reference to a trading stamp scheme, the defendant, a retail mer-

chant, was obligated upon certain conditions to pay 50 cents per 100 for all stamps required and $175 for 100 picture frames designed to be given with portraits to customers purchasing $25 worth of goods at his store. It was conclusively shown that plaintiff had not at the time of making the contract, nor when the action was commenced, complied with the statute prohibiting a nonresident corporation from transacting any business, acquiring or disposing of any property, instituting or maintaining any action at law, or otherwise on any contract made in this state, unless its articles of incorporation shall have been filed in the office of the Secretary of State and a resident agent appointed upon whom service of process may be had. Sections 883-885, Rev. Civ. Code.

In the early case of Wright v. Lee, 2 S. D. 596, 51 N. W. 706, the only question relating in the slightest degree to the point now under consideration was whether a foreign corporation doing business in this state, without complying with the statute as it then existed, could make an assignment for the benefit of creditors, and, upon the anomalous theory that the Legislature did not intend to give our citizens the right to question the unlawful acts of foreign corporations, and that none but the sovereign state could complain, the assignment was held valid. Although the case covers 34 closely printed pages, composed principally of citations and quotations from nearly all the states to the effect that foreign corporations are prohibited from transacting business therein until they have complied with the terms upon which permission is granted, and that contracts in violation of a statute are void, the reasoning of the opinion is at variance with all the authorities, and, while the conclusion that a delinquent foreign corporation may make an assignment for the benefit of creditors is now considered to be well settled, neither of Judge Bennett's associates concurred in the proposition, and Judge Corson declined to express an opinion with reference thereto. That no question as to the right of a foreign corporation to transact business or maintain an action in this state was then before the court is clear from the fact that the making of an assignment in this state, by officers elected in this state, for the benefit of creditors in this state, was not within the statutory prohibition, and in no sense is

that case an authority bearing, even remotely, upon the question now before us.

From a most exhaustive article on the law of corporations written for 19 Cyc., at page 1280, by Judge Seymour D. Thompson, we quote as follows: "The doing of matters of which the ordinary business of a foreign corporation does not consist, but which it does in the exercise of its general rights for the purposes of its safety, or in order to do justice to its creditors, or to comply with some other provision of the local law, are not the 'doing of business, within a state, within the meaning of statutes like those under consideration; but, under a sound interpretation of such statutes, the doing of business consists only of carrying on the operations of its trade for the making of profit. It is accordingly held that there is no doing of business in the state, within the meaning of such statutes, where foreign corporations make an assignment of their property for the benefit of their creditors, or confess a judgment in favor of a particular creditor." In discussing the question vitally pertinent to every court called upon to construe a statute like ours the same distinguished jurist and author, as late as the year 1904, says: "If, as is sometimes the case, the statute expressly declares that all contracts of a foreign corporation in violation thereof shall be void, or that no action shall be maintained thereon, then of course there is no doubt as to the intention of the Legislature, and there can be no recovery thereon by the corporation." 19 Cyc. 1292. Speaking further, and to the point that when a statute provides that foreign corporations shall do no business within the state except upon compliance with the statute, Judge Thompson says: "When such corporation does business in the state in violation of the statute, and, through the business so done, a contract accrues to it which would otherwise be enforceable in the courts of the state, the corporation cannot, because of the statutory prohibition maintain an action upon such contract in the courts of the state." In support of the proposition he cites numerous cases in the notes from each of the following states: Alabama, Colorado, Illinois, Indiana, Kentucky, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, North Carolina, Oregon, Pennsylvania, Tennessee, Texas, Utah, Vermont, Wiscon-

sin, United States and the provinces of Canada. 19 Cyc. 1289 to 1291, incl.

Construing a statute of Colorado enacted in 1901, and which does n t in terms prohibit the institution of an action based on a contract in violation of such provision, the federal court, in the case of U. S. Rubber Co. v. Butler Shoe Co. (C. C.) 132 Fed. 398, say: 'Complainant could sell its goods to respondent or to any other purchaser without paying tribute to the state. But, when they brought goods into the state to be sold in the general market, they became subject to the general law of the state in respect to foreign corporations. Not having complied with the act of assembly of 1901, it must be said that they have no right of action upon the contracts mentioned in the bill of complaint. It matters not that the act of assembly does not declare the contracts to be void, and when the plaintiff cannot establish a cause of action without relying upon an illegal contract he cannot recover. Miller v. Ammon, 145 U. S. 421, 12 Sup. Ct. 884." From the headnote, fully sustained by the opinion, in New Hope Delaware Bridge Co. v. Poughkeepsie Silk Co., 14 N. Y. Common Law Rep. 648, we quote as follows: "A foreign corporation keeping an office in this state for receiving deposits, and discounting notes without being expressly authorized by the laws of this state to do so, cannot maintain an action for the money loaned either on a note or other security taken on such loan, or on the count for money lent." In the very recent case of South Amboy Terra Cotta Co. v. Poerschke 90 N. Y. Supp. 333, it is said: "A foreign corporation doing business in New York, and having a regular place of business there, at which its directors met, and its books and most of its money were kept, and at which contracts and payments were made, cannot maintain a suit on a contract made in New York prior to a compliance with the General Corporation Law, Laws 1892, p. 1805, c. 687, § 15, as amended by Laws 1901, p. 1326, c. 538, declaring that no foreign corporation shall maintain an action on any contract made in the state, unless, before making it, it shall have procured a certificate from the Secretary of State, and the fact that it obtained the certificate before the commencement of the suit was insufficient." Welsbach Co. v. Norwhich Co., 96 App. Div. 52, 89 N. Y. Supp. 284.

It is stated in the decision of Wright v. Lee, supra: "That a contract prohibited by statute is void, and if a statute provides a penalty for doing an act, any contract under such a statute is invalid, whether it be so declared or not. * * * There can be no doubt of the power of the Legislature to prescribe the terms and conditions upon which a foreign corporation may do business in this state. That consent may be upon such terms and conditions as the Legislature, under its lawmaking power, may impose, and they may be excluded altogether, if thought to be wise. Before exercising their franchises, such corporations must comply with the conditions imposed." While it was incidently said that a failure to comply with sections 3190, 3192, Comp. Laws Dak. 1887, did not render the acts of foreign corporations void, the subject is reviewed at great length, and, as the opinion is very instructive and an authority favorable to our view, we further quote as follows: "In Oregon, section 8 of the act of October 21, 1864, provides: 'A foreign corporation before transacting business in this state must duly execute and acknowledge a power of attorney, and cause the same to be recorded in the county clerk's office of each county where it has a resident agent.' The purpose of this requirement is declared, in the ninth section of the act, to secure the appointment of an attorney authorized to receive service of process so as to enable the citizens or inhabitants of Oregon to sue in the courts of that state, thereby avoiding delay and expense in any litigation that may be necessary with such foreign corporations. This law was construed by the United States court for the district of Oregon in the case of In re Comstock, 3 Sawy. 218, Fed. Cas. No. 3,078. In that case Judge Deady, in an exhaustive opinion, says: "Two questions appear to rise: (1) Does the Oregon statute prohibit the transaction of business therein by a foreign corporation until its requirements are complied with? (2) Is the assignee estopped to show a want of compliance by the bank with the statute because the bankrupts were parties to the transaction alleged to have been done in violation of it?' After stating the principles of law in relation to foreign corporations transacting business outside their own domicile, as laid down in Bank v. Earle, and Story in his Conflict or Laws, supra, and those approved by Mr. Justice Field in Paul

v. Virginia, 8 Wall. 181, and in the case of Lafayette Ins. Co. v. French, 18 How. 407, and Ducat v. City of Chicago, 10 Wall. 410, he says: 'The bank, then, has no power to make a contract within this state without its permission or consent. If the state is silent on the subject, by the comity of nations its permission is presumed, unless it would be contrary to its policy or interest. But the state has spoken on the subject and given its consent to the transaction of business within its jurisdiction by the bank, not absolutely, but upon a condition or limitation. This condition or limitation is found in the first clause of section 8 of the act aforesaid. * * * The state, having this right to permit the bank to do business within its limits or not, with or without terms, has seen fit, for the security of its citizens, to require the execution and record of this power of attorney before the transaction of such business. * * * It follows, of course, from these premises, that the bank had no power to contract in the state until it had complied with the terms upon which the permission to do business was granted. It was required to perform the condition before it transacted business. But it is said that this statute is directory, and therefore the acts of the foreign corporation, done in disregard of it, are not illegal and void. It is the duty of a court to give effect to the intention of the Legislature as far as practicable, and such intention should be ascertained from the words used in the statute and the subject-matter to which it relates. The words of this act are certainly mandatory in form. Before transacting any business the corporation must appoint an attorney. Language could not be plainer. The purpose of the act is apparent. As has been said, it is to secure the people of the state the right to sue the foreign corporation in the courts of the state; but, unless the attorney is appointed before the business is transacted, it will not be attained.' The court then held the contract under consideration illegal and void. In the case of Semple v. Bank, 5 Sawy. 88 Fed. Cas. No. 12,659, Judge Deady, again construing the same statute, reaffirmed his former decision in more emphatic terms, if possible. * * * In Illinois it was enacted that: 'It shall not be lawful for any agent or agents of any insurance company incorporated by any other state than the state of Illinois, directly or indirectly, to take risks or transact any business of in-

surance in this state without first producing a certificate of authority from the auditor of the state.' Pub. Laws 1855. p. 46. The statute also imposed a penalty for a violation of its provisions. The Supreme Court held that a promissory note, given to an insurance company which had not complied with the statute, was void, and could not be enforced. Assurance Company v. Rosenthal, 55 Ill. 85, 91. Justice Walker, in delivering the opinion, says: 'When the Legislature prohibits an act, or declares that it shall not be lawful to perform it, every rule of interpretation must say that the Legislature intended to interpose its power to prevent the act, and, as one of the means of its prevention, that the courts shall hold it void. This is as manifest as if the statute had declared that it should be void.' See, also, Pierce v. State, 106 Ill. 11. The same rule was applied in Wisconsin under a similar statute. Insurance Co. v. Harvey, 11 Wis. 394. In Indiana an act applicable to foreign corporations provides that: "Such foreign corporations shall not enforce in any of the courts of this state any contract made by their agents, or by persons presuming to act as their agent, before compliance * * * with the provisions of sections 1 and 2 of this act.' It was decided by the Supreme Court that, while contracts made by foreign corporations which had not complied with the statute were valid, the corporation could not sue on such contracts until after the statutory requirements had been fulfilled, and that the company's right to sue must be pleaded in abatement. Mowing, etc., Co. v. Caldwell, 54 Ind. 270; Smith v. Little, 67 Ind. 549; Daly v. Insurance Co., 64 Ind. 1; Manufacturing Co. v. Effinger, 79 Ind. 264; Elston v. Piggott, 94 Ind. 14. This act was superseded, as to foreign corporations, by the act of 1865, which prohibits such companies and their agents from doing business within the state until certain conditions had been complied with, and a certificate obtained from the auditor of the state. It was decided by the Supreme Court that this statute did not merely affect the right to sue in the courts of the state, but that contracts made before complying with the prescribed conditions were absolutely void by force of the statute. Hoffman v. Banks, 41 Ind. 1; Insurance Co. v. Thomas, 46 Ind. 44. In Massachusetts, Pennsylvania, Michigan, and Kentucky, a similar doctrine has been laid down in their courts construing statutes re-

lating to foreign corporations.   Roche v. Ladd, 1 Allen (Mass.) 436; Insurance Co. v. Pursell, 10 Allen (Mass.) 231; Williams v. Cheney, 3 Gray (Mass.) 215; Insurance Co. v. Harvey, 11 Wis. 394; Brackett v. Hoyt, 29 N. H. 264; Buxton v. Hamblen, 32 Me. 448; Bancroft v. Dumas, 21 Vt. 456; Thorne v. Insurance Co., 80 Pa. 15, 21 Am. Rep. 89; Scott v. Duffy, 14 Pa. 20; Insurance Co. v. Stoy, 41 Mich. 385, 1 N. W. 877; Pierce v. People, 106 Ill. 11; Franklin Ins. Co. v. Louisville & A. Packett Co., 9 Bush. (Ky.) 590."

Thus enlightened by the declarations of this court concerning legislative power to protect our citizens from gross imposition, by requiring every foreign corporation to put itself upon equal footing with domestic corporations, in order to lawfully transact business in this state, the Legislature of 1895, declaring an emergency to exist, amended the statute by adding to the existing restrictions as to the transaction of business that "No corporation created or organized under the laws of any other state or territory shall * * * sue or maintain any action at law or otherwise, in any of the courts of this state until such corporation shall have filed in the office of the Secretary of State a duly authenticated copy of its charter or articles of incorporation. * * * Provided, that no action shall be commenced or maintained in any of the courts of this state by such corporation on any contract , agreement or transaction made or entered into in this state, by such corporation, unless such corporation shall have fully complied with the provisions of this article.   Provided, further, that it shall be unlawful for any person to act within this state as agent or officer of any foreign corporation unless such corporation shall have appointed an agent as hereinbefore provided, and every person so acting as such agent or officer of any such corporation shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than ten nor more than one hundred dollars and imprisoned in the county jail not less than ten nor more than thirty days, or both such fine and imprisonment at the discretion of the court. That justices of the peace shall have concurrent jurisdiction with the circuit courts to hear and determine any criminal action arising under the provisions of this act."   In a recent case, where one of

our citizens found a corporation in another state from which he purchased certain building material, it was held that such isolated transaction was not absolutely void, but, in the language of the statute, the right to resort to our courts for the enforcement of its claim was suspended "until such corporation shall have filed in the office of the Secretary of State a duly authenticated copy of its charter or articles of incorporation," and "shall appoint an agent who shall reside at some accessible point in this state duly authorized to accept service of process. * * *" In discussing the question, we say: "In requiring the filing of corporate articles and the appointment of an agent as a condition precedent to the commecement of an action in any court of this state by a foreign corporation to enforce a claim arising in another state, the Legislature has used the plainest of words in sentences free from ambiguity, and whether an action is maintainable, on account of a transaction entered into in this state by such corporation prior to complying with the statute, is a question not now presented for determination, and concerning which no opinion is expressed. However, it is noticeable that section 883 of the Revised Civil Code provides generally that no action is maintainable by a foreign corporation until its articles are filed and an agent appointed, while section 885 specifies that no action is maintainable 'on any contract, agreement or transaction made or entered into in this state by such corporation, unless such corporation shall have fully complied with the provisions of this article.' " Iowa Falls Mfg. Co. v. Farrar, 19 S. D. 632, 104 N. W. 449.

Manifestly it was the intention of the Legislature to presently subject every foreign corporation, upon coming into this state, to exercise its franchise to all the duties and liabilities imposed upon similar domestic corporations, and nothing short of a compliance with the statute before the contract, agreement or transaction sought to be enforced was made or entered into will entitle a corporation to commence or maintain an action in any of the courts of this state. This purpose has been effectuated by making such unauthorized acts criminal and by the use of the following phrase, the grammatical tense of which always denotes an act completed before the performance of some other act: "Unless such corporation shall have fully complied with the provisions of this article." Under statutes

providing no penalty for their violation, and otherwise much less favorable to this view than our own, the courts have uniformly held that the right of action is lost, unless the statute was complied with before the contract sought to be enforced was entered into. Delaware R. Q., etc., Co. v. Pass Ry. Co., 204 Pa. 22, 53 Atl. 533; Brewing Co. v. Peimeisl, 85 Minn. 121, 88 N. W. 441; Assurance Co. v. Rosenthal, 55 Ill. 85, 8 Am. Rep. 626; Loan Co. v. Eyer, 87 N. W. 1058; Seamans v. Temple Co. (Mich.), 63 N. W. 408, 28 L. R. A. 430; Plow Co. v. Wyland, 76 Pac. 863; Driller Co. v. Superior Court of San Francisco, 72 Pac. 398; Hanchey v. Loan Ass'n (Ala.), 37 South. 272; Diamond Glue Co. v. U. S. Glue Co., 187 U. S. 611, 23 Sup. Ct. 206. Adhering to the doctrine announced in Uhlig v. Garrison, 2 Dak. 71, and Wright v. Lee, supra, to the effect that no action is maintainable to enforce a contract which is unlawful or contrary to public policy, it was held by a majority of this court, in Johnson v. Berry, 104 N. W. 1114, that no recovery could be had for threshing grain pursuant to a contract made and performed in violation of the statute requiring the owner of a threshing machine to enter into a certain bond, and the conclusion reached in that case is alone sufficient to justify the action of the trial court now under consideration. In Miller v. Ammon, 145 U. S. 421, 12 Sup. Ct. 884, 36 L. Ed. 759, Mr. Justice Brewer, speaking for the undivided court, says: "The general rule of law is that a contract made in violation of a statute is void, and that, when a plaintiff cannot establish his cause of action without relying upon an illegal contract, he cannot recover. Pol. Cont. pp. 253 to 260; Penn v. Bornman, 102 Ill. 523; Alexander v. O'Donnell, 12 Kan. 608; Gunter v. Leckey, 30 Ala. 591; Kennedy v. Cochrane, 65 Me. 594; Bank v. Owens, 2 Pet. (U. S.) 527, 539. 7 L. Ed. 508; Pangborn v. Westlake, 36 Iowa, 546, 549; Harris v. Runnels, 12 How. (U. S.) 79, 84, 13 L. Ed. 901. In Bank v. Owens, this court said: "There can be no civil right where there can be no legal remedy, and there can be no legal remedy for that which is itself illegal.'"

Notwithstanding such legislative injunction, the violation of which is made a public offense punishable by fine or imprisonment, plaintiff procured this forbidden contract, by its terms performable in this sate, but which was rendered inoperative and void both by

express statute and a rule of public policy prohibiting its enforcement. Clearly then, the filing of corporate articles and appointing an agent after making such contract and commencing this action was ineffectual to give the transaction any validity, while the answer of the defendant was amply sufficient to present the question for review.

The judgment dismissing the action entered upon a verdict directed against plaintiff is therefore affirmed.

HANEY, J. In my opinion the defense based on plaintiff's failure to comply with our law relating to foreign corporations is not properly pleaded, but the plaintiff is not in position to question the sufficiency of the answer, not having attacked it in the court below, and having itself introduced the evidence upon which the verdict was directed. Such evidence disclosed that the contract sued upon was made, and this action was begun before the plaintiff complied with the statute, and that the contract was executed and to be performed in this state. Such being the undisputed facts, the plaintiff is without remedy in the courts of this state, for the reason that a foreign corporation cannot commence or maintain any action at law or otherwise, until it shall have complied with the statute, and it cannot commence or maintain an action on any contract made in the state unless it shall have fully complied with the statute. Rev. Civ. Code, §§ 883, 885. In other words, before transacting any business or bringing any suit in this state, it must comply with its laws. If the contract is one made in another state, it only has to comply before bringing the suit. If the contract is one made in this state it must comply before making the contract. The statute has been modified since Wright v. Lee was decided. Laws 1895, p. 52, c. 47. The legislative intent is clear. A foreign corporation can do no lawful act, acquire no right, or demand any recognition in this state before it has complied with its laws which are just and reasonable. For these reasons I concur in the conclusion that the judgment of the circuit court should be affirmed.

CORSON, J. (dissenting). I am unable to concur in the opinions of my associates in holding that the contract in controversy in this action was void, for the reason that it was entered into prior-

to the plaintiff filing its articles of incorporation and appointing a resident agent as prescribed by the Code. Section 883 of the present Code is substantially the same as section 3190, Comp. Laws Dak. 1887, with the addition of the clause providing that no action could be maintained until the provisions of the act should be complied with. Section 3192 was amended by the addition of a similar clause thereto. The only material change, in my judgment, therefore, in the sections was to add the provisions above mentioned. In 1892 this court, in Wright v. Lee, 2 S. D. 596, 51 N. W. 706, after an exhaustive discussion as to the construction to be given to section 2190 in the Compiled Laws of 1887 held that: "Unless the statute prescribing the prerequisites to the right to do business declares that the contract made by a foreign corporation shall be void the courts should not declare them to be so absolutely." With this decision before it, the Legislature in 1895 made the amendments above stated, but omitted to declare in either section that a contract made before a corporation had complied with the statute was void; and, so far as the question involved in this controversy is concerned, the statute in my opinion remains practically the same as it stood at the time that decision was made. I am unable to find in either section, as amended, any language declaring a contract made by, or deed executed to, a corporation before it has complied with the law void, or that indicates any intention of the Legislature to make such a contract or deed void; but, on the contrary, the Legislature has expressly prescribed the penalties imposed by it for failure to comply with the law, by providing that no action shall be maintained by any such corporation in the courts of this state, until it has complied with the law, and providing for the punishment of any agent who may make such contract. The Legislature having expressly prescribed the penalties imposed upon a corporation for failure to comply with the law, it is not competent for this court by construction to add any other penalties thereto; it being a well-settled rule of law that a statute penal in its nature must receive a strict construction, and the penalties cannot be increased by judicial construction.

Mr. Justice FULLER, in his opinion, has cited a large number of authorities in support of the decision of a majority of the court.

The decisions, says the author, in the article entitled "Foreign Corporations" (Am. & Eng. Enc. of Law, vol. 13, p. 875), "are in hopeless. conflict," and, as will be observed upon an examination of that article, quite as large a number of cases are cited holding such contracts not void under statutes similar to our own, and in my judgment these decisions are supported by better reasoning. The learned author, in the article on Foreign Corporations in 19 Cyc. 1298, says, "The shocking immortality involved in the proposition that a citizen should be judicially encouraged to repudiate his contract, fairly made, with a foreign corporation, and to keep the fruits of such contract while repudiating the obligation on his part—to keep the goods but not to pay for them—has led some of the Legislatures and courts to find a way out, by adopting the rule that the failure of a foreign corporation to comply with statutes imposing conditions upon which it may enter the state and do business does not operate to render its contracts, made with inhabitants of the state, wholly void, but merely operates to suspend the remedy of the foreign corporation in the courts of the state upon such contracts, until it shall have complied with the statutory conditions. Under this rule, until such compliance, any action by the foreign corporation to enforce the contract is prematurely brought, but is not barred, so that an answer setting up the noncompliance of the foreign corporation with the statute would be an answer in the nature of a plea in abatement, and judgment upon it in favor of defendant would operate merely to abate the suit." In support of the proposition the author also cites a large number of decisions, including the states of New York, Massachusetts, Kansas, Missouri, and others, and a large number of decisions from the federal courts. Mr. Thompson, in his work on corporations (volume 6, § 7950), in discussing this subject, says that "the decisions are in a state of irreconcilable contradiction," and in the conclusion of the section says that such contracts are usually held void, where they are "unaccompanied with any specific penalty"; but in further discussing this subject, in section 7956, he says: "The spectacle of the demoralization produced by judicial decisions which uphold the citizens of the state in repudiating their honest engagements with foreign corporations, on grounds having no relation to the merits of those

engagements, was evidently the circumstance which drove the Supreme Court of Indiana to a reconsideration of this question, so as to hold that the statue of that state relating to foreign corporations and their agents, which put such foreign corporations and their agents under a restraint enforced by a penalty, against doing business in the state until they complied with certain named conditions, did not operate to render the contracts made by such corporations with citizens of the state, before complying with such conditions, absolutely void, but merely operated to suspend the remedy of the foreign corporation in the courts of the state upon such contracts, until it should have complied with the statutory conditions. The new theory was that, until such compliance, any action by the foreign corporation to enforce the contract was prematurely brought; so that an answer setting up the noncompliance of the foreign corporation with the statute would be an answer in the nature of a plea in abatement, and judgment upon it in favor of the defendant would operate to abate the suit."

I shall not attempt to review the numerous decisions upon this subject further than to call attention to two decisions; one by the Court of Appeals of New York, and the other by the Supreme Court of the United States. In the case of the Neuchatel Asphalte Co. v. City of New York, 155 N. Y. 373, 49 N. E. 1043 decided in 1898, under a statute substantially the same as our own as amended in 1895, that learned court uses the following language in construing the act under consideration in that case: "Its purpose was not to avoid contracts, but to provide for an effective supervision and control of the business proposed to be carried on here by foreign corporations. It provided no penalty, in the event of a noncompliance, other than the suspension of civil remedies. Such, and such only, were the consequences of the violation of the statute, and none others will be implied as intended by the Legislature. The offense aimed at was only an offense because declared by the statute to be so, and its particular proportion and consequences were defined therein." The trial court in that case held the contract void, but its ruling was reversed by the Supreme Court, and the decision of the latter court was affirmed by the unanimous decision of the Court of Appeals as above stated. Substantially the same view

was taken by the Supreme Court of the United States in Fritts v. Palmer, 132 U. S. 282, 10 Sup. Ct. 93, in construing a statute similar to our own of the state of Colorado. The Circuit Court of the District of Colorado had held a deed made by a party to the defendant corporation void for the reason that the deed was made to the corporation before it had filed its articles of incorporation and appointed a resident agent. But the Supreme Court of the United States reversed the decision, all the judges concurring except Miller, J., and held that, inasmuch as the law of Colorado had prescribed certain penalties for a failure to comply with the act, those penalties must be deemed all the penalties the Legislature intended to impose upon the corporation, and therefore that the deed was valid, notwithstanding it was made in violation of the law.

For fourteen years the law as anounced in the decision in Wright v. Lee, supra, has been regarded as the law of this state, and as to realty a rule of property. The decision of my associates, without any apparent reason therefor or any material change in the law, other than precluding a corporation from maintaining an action in this state, as I view the law, until it has complied with the provisions of the Code, has in effect, if not directly, reversed and overruled the decision of this court in that case. The rule established by that decision has become so well settled and understood by the bar of this sate, and so far a rule of property, that it seems to me unwise and injudicious at this time to reverse it, in view of the fact that the Legislature, although amending the sections, has failed to declare a contract made in violation of the provisions of the sections void. I am of the opinion that in this case it would have been proper for the trial court, under the pleadings and evidence, to have dismissed the action without prejudice, for the reason that at the time the action was commenced the plaintiff corporation had not complied with the provisions of the Code and that the judgment of the court should now be reversed, with directions to the court below to enter a judgment dismissing the action without prejudice.