## REED v. TODD et al.

Since a state has the power entirely to exclude a foreign cor-
poration, so it has the power, subject to constitutional limitations,
of prescribing the terms upon which such corporation may be
permitted to do business within its limit.

Const. rat. 17, § 6, declaring that no foreign corporation shall
do business in the state without having one or more places of busi-
ness and an authorized agent upon whom· process may be served,
was not designed to prevent legislation imposing additional restraints.

Civ. Code, § 883, forbids a foreign corporation to transact busi-
ness in the state, or to acquire, hold, and dispose of property, or
to sue, until it shall have filed with the Secretary of State a copy of
its articles of incorporation. Section 885 requires such a corporation
to appoint a resident agent authorized to accept service of process,
and that a copy of such appointment be filed with the Secretary of
State and register of deeds of the county where such agent resides.
Held, that a foreign corporation may acquire title to real property

within the state without having complied with the law relating to such corporations; its failure to comply therewith merely subjecting it to a proceeding by the state to prevent it from continuing to exercise its franchise.

McCoy and Smith, JJ., dissenting in part.

(Opinion filed, May 24, 1910.)

Appeal from Circuit Court, Edmunds County. Hon. LYMAN T. BOUCHER, Judge.

Action by Nancy Reed against Wilbert A. Todd and others. Judgment for defendants, and plaintiff appeals. Reversed.

*Chas. H. Bartelt* (*Park Davis and William G. Clark, of counsel*), for appellant. *Campbell & Taylor,* for respondents.

HANEY, J. The paramount issue in this action is whether a corporation for profit organized under the laws of another state can acquire title to real property within this state without having complied with its laws relating to foreign corporations. It arises upon this state of facts: The land in controversy having been sold for taxes, a certificate of sale was isued to one Webb Vincent, who assigned the certificate to the Hawkeye Loan & Brokerage Company, a corporation organized under the laws of Iowa, for "the buying and selling of certificates of tax sale, purchasing, selling, holding and incumbering all classes and kinds of property, negotiating loans, purchasing, holding and selling securities, municipal orders, bonds, negotiable paper, mortgages and stock, and to do all things necessary to carry on a general brokerage business." Thereafter a tax deed was issued to the assignee of the certificate. Subsequently the Iowa corporation deeded the land to the plaintiff. Prior to the trial of this action, the corporation had taken no steps to comply with the laws of this state relating to foreign corporations. For that reason, the learned circuit court concluded no title was acquired by it and none passed to the plaintiff.

Plaintiff contends the Iowa corporation did acquire and transfer title notwithstanding its failure to comply with the laws of this state relating to the duties of foreign corporations. It may be stated as a general proposition that, as a state has the power entirely to exclude from its limits a corporation organized under the

laws of another state, so it has the power, subject to constitutional limitations, of prescribing the terms upon which alone it may be permitted to do business within its limits, and of imposing any restraints which it may see fit. 19 Cyc. 1251. No feature of interstate commerce being involved, no doubt can exist as to the inherent power of this state to have wholly excluded the Iowa corporation, and the power to exclude necessarily includes the power to impose such conditions as the wisdom of the Legislature may dictate, unless that power is limited by some provision of the state Constitution. It declares: "No foreign corporation shall do any business in this state without having one or more known places of business and an authorized agent or agents in the same upon whom process may be served." Const. art. 17, § 6. Whatever other effects may have been intended, certainly this provision was not designed to prevent legislation imposing additional restraints. While in itself a limitation upon the rights of foreign corporations it is not a limitation upon the legislative power as to further regulation or entire exclusion. Therefore the effect of the Iowa corporation's noncompliance before attempting to acquire property within this state depends upon the construction to be given the statute in force when such attempt was made. The language of the statute as found in the Revised Civil Code, with the clauses added in 1895 italicized, and one immaterial clause in brackets which was then omitted, is as follows: "No corporation created or organized under the laws of any other state or territroy shall transact any business within this state, or acquire, hold and dispose of property, real, personal or mixed, within this state, *or sue or maintain any action at law or otherwise, in any of the courts of this state,* until such corporation shall have filed in the office of the Secretary of State a duly authenticated copy of its charter or articles of incorporation, or shall have complied with the provisions of this section. Provided, that the provisions of this section shall not apply to corporations and associations created for religious and charitable purposes only. Such charter or articles of incorporations shall be recorded in a book to be kept by the secretary of this state for that purpose. Such corporations shall

appoint an agent, who shall reside at some accessible point in this state, [in the county where the principal business of said corporation shall be carried on,] duly authorized to accept service of process and upon whom such service of process may be had in any action in which said corporation may be a party and service upon such agent shall be taken and held as due and personal service upon such corporation. A duly authenticated copy of the appointment of said agent shall be filed and recorded in the office of the Secretary of State and register of deeds of the county where such agent resides, and a certified copy thereof by the Secretary of State or register of deeds shall be conclusive evidence of the appointment and authority of such agent. *Provided, that no action shall be commenced or maintained in any of the courts of this state by such corporation on any contract, agreement or transaction made or entered into in this state, by such corporation, unless such corporation shall have fully complied with the provisions of this article. Provided, further, that it shall be unlawful for any person to act within this state as agent or officer of any foreign corporation unless such corporation shall have appointed an agent as hereinbefore provided, and every person so acting as such agent or officer of any such corporation shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than ten nor more than one hundred dollars and imprisonment in the county jail not less than ten nor more than thirty days or both such fine and imprisonment at the discretion of the court. That justices of the peace shall have concurrent jurisdiction with the circuit courts to hear and determine any criminal actions arising under the provisions of this act."* Rev Civ. Code, §§ 883, 884, 885; Comp. Laws. §§ 3190, 3191, 3192; Laws 1895, c. 47. Concerning the statute, prior, to its amendment, this court expressed the following views in an action involving the validity of a general assignment for the benefit of creditors, executed in this state, by a noncomplying Minnesota corporation: "The acts of a foreign corporation, which has not complied with the requirements of the Constitution and laws of the state in relation to such corporation transacting business, owning and

disposing of property, and, in case of insolvency, making an as-
signment of its property for the benefit of creditors, are not void
and unenforceable, but such a foreign corporation may in a direct
proceeding instituted by the state be prevented from exercising its
franchise within the state until its has fully complied with the Con-
stitution and laws. Article 17, § 6, of the Constitution, and sections
3190, 3192, Comp. Laws, were not designed or intended as a pro-
hibition upon foreign corporations to make lawful contracts in this
state to the extent to declare such contracts void, but were merely
intended to furnish the means by which citizens could procure per-
sonal judgments against them, and bring them and their property
within the reach of the process and jurisdiction of our courts; thus
protecting them from fraud and imposition, and affording adequate
and speedy relief against either." Wright v. Lee, 2 S. D. 596, 51 N.
W. 706. These conclusions were adhered to on rehearing with
this further statement: "The question of the right of a duly or-
ganized foreign corporation to do business in this state without
having complied with the statutes of this state as to filing an
authenticated copy of it articles of incorporation, etc., cannot be
raised or determined collaterally." Wright v. Lee, 4 S. D. 237,
55 N. W. 931. The decision on rehearing was rendered in Oc-
tober, 1893. In February, 1895, on an appeal from an order over-
ruling a motion to discharge an attachment, it was held on the
authority of Wright v. Lee, supra, that a foreign corporation
might maintain an action in its own name without complying with
the statute. Pech Mfg. Co. v. Groves, 6 S. D. 504, 62 N. W.
109. The Legislature being then in session re-enacted the statute
with the amendments as indicated; the amendatory act taking
effect March 14, 1895, Laws 1895, c. 47.

Though there may be room for discussion as to all the objects
sought by these amendments, no doubt exists with respect to the
right of a foreign corporation for profit to sue in the courts of this
state. Manifestly it was intended thereby that no such corporation
shall maintain any action in any of the courts of this state until
it shall have complied with the requirements of the statute, and
that no such corporation shall maintain any action in any of the

courts of this state on any contract, agreement, or transaction entered into in this state by such corporation without having complied therewith. The plain and unambiguous language employed is susceptible of no other interpretation. In all cases arising since its amendment the statute has been given that interpretation, and in all such cases not affected by the interstate commerce clause of the federal Constitution it has been given that effect. Bradley, Metcalf & Co. v. Armstrong, 9 S. D. 267, 68 N. W. 733; Acme Mercantile Agency v. Rochford, 10 S. D. 203, 72 N. W. 466, 66 Am. St. Rep. 714; Thompson & Juve v. Scroyer, 20 S. D. 72, 104 N. W. 854; American Copying Co. v. Eureka Bazaar, 20 S. D. 526, 108 N. W. 15. Wright v. Lee, supra, involved the effect of the statute upon the acts of a noncomplying foreign corporation, while all the cases decided since the statute was changed have involved its effect upon the right of the corporation to maintain an action in its own name, a distinction which cannot be ignored without causing confusion. "The right to sue and to be heard is one thing; but the right to have contracts enforced upon trial is another and a quite distinct matter." American Button Hole Co. v. Moore, 2 Dak. 291, 8 N. W. 131. American Copying Co. v. Eureka Bazaar, supra, was an action on a contract entered into in this state by a foreign corporation which had neither complied with its laws at the time of entering into the contract nor before the action was commenced. A judgment of dismissal on a directed verdict was affirmed, one member of this court regarding the contract as void, one regarding the plaintiff as precluded from maintaining the action by the express terms of the statute, while the other, regarding the contract as valid, thought the judgment should be reversed with directions to dismiss without prejudice in order that the plaintiff might comply with the statute and institute another suit on the same cause of action. All believed the plaintiff could not sue before complying with the statute. Two believed it could not maintain an action on the particular contract in suit even after compliance, while only one considered the contract void. In Dewey v. Komar, 21 S. D. 117, 110 N. W. 90, an action on an account assigned by a foreign corporation, it was contended the

assignee had acquired no title, but the question, the one in the case at bar, was not decided; the fact of the corporation's failure to comply with the statute not having been established. The issue under discussion is not distinguishable in principle from the one in Wright v. Lee, supra, as to the validity of the general assignment involved therein. As to such issue, the authority of Wright v. Lee, supra, has not been impaired by any subsequent decision of this court. Clearly then, unless the statute was substantially changed in 1895, with respect to its effect upon the power of a noncomplying foreign corporation to acquire and dispose of real property within this state, the conclusion of the circuit court in the present action cannot be sustained without overruling that case. Though the statute before its amendment might have been considered as depriving foreign corporations for profit of the power to acquire, hold, and dispose of property within this state without complying with its requirements on the theory that, whereas corporations exist only by operation of law and possess only such powers as are conferred by law, they necessarily are without power to do what the law expressly forbids; though the validity of the general assignment considered in Wright v. Lee, supra, might have been sustained on grounds other than it was; the effect of the statute upon the acts of such corporations was necessarily involved, and this court, having then concluded that it did not render such acts void, should now adhere to that view, unless the law was changed in this respect by the 1895 amendments. What, then, was the object of such amendments as to contracts, agreements, and transactions made or entered into in this state? Were they thereafter to be regarded as void and subject to collateral attack? It was not so expressly declared. Nor did the Legislature forbid the commencing and maintaining of actions thereon by any person other than the corporation itself. It should be assumed that the language of Constitutions and statutes is selected with care and deliberation. Why prohibit actions upon void transactions? This is the language: "Provided, that no action shall be commenced or maintained in any of the courts of this state by such corporation on any contract, agreement or transaction made

or entered into in this state, by such corporation, unless such corporation shall have fully complied with the provisions of this article." The permission to maintain an action on the transactions mentioned as to all other persons is scarcely less clear and explicit than is the prohibition as to the corporation. As to the present controversy, the amendment, by its terms, as plainly permits an action upon the transaction here involved by the plaintiff as it prohibits one thereon by the offending Iowa corporation. As interpreted by this court, failure to comply with the statute, before its amendment, merely subjected the corporation to a proceeding by the state to prevent it from continuing to exercise its franchise within this state. The amendments added these consequences only: Inability of the corporation to sue on any transaction before compliance with the statute, inability of the corporation to sue on any transaction entered into in this state before having complied with the statute, and the liability of the corporation's agents and officers to criminal prosecutions. The provisions relating to criminal prosecutions did not make the acts of a noncomplying foreign corporation more contrary to an express provision of the law, more contrary to the policy of express law though not expressly prohibited, or more contrary to good morals than they were before the enactment of such provisions. Consequently the law was not so changed as to justify the conclusion of the learned circuit court that the Iowa corporation acquired no title and none passed to the plaintiff. Probably the attention of the Legislature was directed to the decision in Pech Mfg. Co. v. Groves, supra, rendered while it was in session, and which related to the right to sue rather than the validity of contracts; otherwise, it would have expressly declared whether or not the transactions of offending corporations should be void. What the policy of the state shall be in this respect is a matter to be determined by the Legislature. If all acts within this state of noncomplying foreign corporations for profit should be void, subject to collateral attack and ineffectual for any purpose, it is within the power of the Legislature to so amend the statute as to produce that result. Until it has done so, the rule announced by this court in its former decisions should prevail in this jurisdiction.

The judgment of the circuit court is reversed.

McCOY, and SMITH, JJ., dissenting.

McCOY, J. While I fully agree with the first part of the foregoing decision wherein it is held that it is within the constitutional legislative power of the state to pass laws prohibiting foreign corporations from transacting business within this state or from acquiring property within this state, yet I am unable to concur in the final conclusion arrived at. There are three things that foreign corporations are prohibited from doing by the provisions of section 883, Civ. Code, until they have complied with the law, viz.: First, shall not transact any business within this state; second, shall not acquire, hold, and dispose of property, real, personal or mixed, within this state; third, shall not sue or maintain any action at law or otherwise within this state. Section 885 provides the manner in which a foreign corporation may comply with section 883 in relation to the commencement of an action within this state. The provisions of 885 relate solely to the third prohibition mentioned in section 883, and there is not one word or syllable contained in section 885 that in any manner qualifies, modifies, limits, or in any manner destroys the force and effect of either the first or second prohibitions against foreign corporations stated in section 883. English language cannot be made any plainer by any future or other Legislature that a foreign corporation cannot acquire, hold, and dispose of property within this state until it has complied with the law. The only possible thing that any future Legislature might with propriety add to the language used in section 883 is that the courts of this state shall not construe this section to mean anything else than just what it says. It is no more within the province of courts to repeal and nullify constitutional statutes regularly passed than it is within the province of the courts to enact or create laws by judicial construction. The unsoundness of the decision in Wright v. Lee, supra, consists in that decision being in direct conflict with section 3190, Comp. Laws, and section 883 of our present Civil Code. So long as this conflict exists, practitioners will bring the question before this court again and again. Section 883 was evidently passed with the view of protecting the citizens of this state from irresponsible foreign corporations—to prevent wildcat insurance and other

spurious companies from preying upon the inhabitants of the state and, when it became necessary to resort to litigation to protect the rights of the citizens, some tangible means would exist for discovering the whereabouts of the offending foreign corporation. Where such a corporation has property within this state subject to attachment, it entails a great expense sometimes upon the resident litigant to ascertain the whereabouts of the corporation in order to lay the foundation for proceedings in rem. That the citizen who has been injured by the acts of a foreign corporation cannot avail himself of the provisions of section 883, and that he has no remedy except through the office of the Attorney General seems to me to be unwarranted and unreasonable. How can the Attorney General bring proceedings to annul the charter of or to prevent foreign corporations from sending their agents across our state lines and transacting business with our citizens where the foreign corporation itself exists outside and beyond the jurisdiction of the courts of this state? The Attorney General has no authority, and the courts of this state have no jurisdiction, to regulate the actions of persons either natural or artificial, who reside in other states, and who never come within the jurisdiction of this state, but who nevertheless may acquire property rights within this state in conflict with the rights of the citizens. It is the citizen who most frequently is injured by the acts of the foreign corporation usually in smaller matters than the great sovereign power of the state would care to proceed in, and that the citizen in such cases is without remedy to avail himself of the benefit of a law made for his benefit, except through the office of the Attorney General of the state, seems to me to be a fallacy never intended by the Legislature, and the holding of the court which in effect denies the citizen of his remedy to raise this question, wherever it may arise, is the reading of something into the statute by construction that has no warrant in sound reason. I fully agree with the majority opinion written by Presiding Justice Fuller in the Eureka Bazaar Case, and I also agree with the opinion of Justice Haney in that case wherein he used the following language: "The legislative intent is clear. A foreign corporation can do no lawful

act, acquire no right, or demand any recognition in this state before it has complied with its laws which are just and reasonable." We should now adhere to the decision in the Eureka Bazaar Case. In the case at bar the foreign corporation, never having complied with the law of this state, could acquire no property right in relation to property situated within this state, and, having acquired no such property right, it had no property right to transfer to appellant. This case must be distinguished from the case where a contract is made outside the state by a foreign corporation relative to property also situated outside the state. There, although the foreign corporation might not maintain an action within this state before complying with the law, still, it could assign or transfer its contract right to some one who could maintain the action, because in that case the contract and property right acquired thereby would not be in contravention of our statute, although the corporation had not complied with our law, but would be law- ful and might be transferred, without the state, to another.

The judgment of the circuit court should be affirmed.

SMITH, J.    I concur in the views expressed in the dissenting opinion. My reasons for differing with the majority of the court may be very briefly summarized.

In Wright v. Lee, supra, this court holds that a citizen of this state cannot defend an action by a foreign corporation suing in the courts of this state on the ground that its acts were in violation of our laws, and that the sole remedy against violations of this law by a foreign corporation is through an action instituted by the Attorney General to oust the corporation from doing business in the state; but, when the foreign corporation refuses to appoint an agent on whom service of process can be made within the state, it may be pertinent to inquire how the Attorney General can acquire jurisdiction to bring the offending corporation into court for the purpose of obtaining a judgment of ouster. Clearly it cannot be done. If, therefore, the state itself is powerless against the predatory invasions of foreign corporations, and the citizens cannot defend in the courts of this state against acts done by such corporation in violation of our laws, it seems to me the

whole statute regulating the rights of property and the acts of foreign corporations is simply rendered nugatory and void. I cannot concur in an interpretation which worked out such results.